**Brett Allen BURSEY, Appellant,**

v.

**Jack M. WEATHERFORD, Individually and in his official capacity as an agent of the South Carolina State Law Enforcement Division, et al., Appellees.**

No. 74–2242.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 10, 1975.

Decided Dec. 2, 1975.

Laughlin McDonald, Atlanta, Ga. (Neil Bradley, Atlanta, Ga., and Herbert E. Buhl, III, Columbia, S. C., on brief), for appellant.

Joseph C. Coleman, Deputy Atty. Gen. of S. C. (Daniel R. McLeod, Atty. Gen. of S. C., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

Appellant Brett Allen Bursey brought this suit under 42 U.S.C. § 1983 seeking damages for alleged violations under color of state law of his constitutional rights. He named as defendants Jack Weatherford, an informant-agent of the South Carolina State Law Enforcement Division (SLED), J. P. Strom, Chief of SLED, and other unknown SLED agents, all in both their individual and representative capacities. Bursey claimed, *inter alia*, violation of his rights to a fair trial and to effective assistance of counsel secured to him under the fifth, sixth, and fourteenth amendments, as a result of intrusion by Weatherford into conferences between him and his attorney preceding his trial for malicious destruction of property.

The district court, hearing this case without a jury, entered judgment against Bursey. It held that Weatherford's conduct did not violate appellant's constitutional rights. We disagree, reverse, and remand for further proceedings.

## I.

On July 27, 1970, Bursey was tried and convicted of the crime of malicious destruction of property. This charge arose out of an incident during the early morning hours of March 20, 1970, during which a brick was thrown through the window of the Richland County Selective Service office in Columbia, South Carolina, and red paint was sprayed and splattered on the outside and inside of the building. Bursey was sentenced to 18 months in prison and served his time.[1]

Jack Weatherford, an informant employed by the South Carolina State Law Enforcement Division (SLED), participated in damaging the draft board property and then arranged his own and Bursey's arrest. To maintain his "cover," Weatherford was ostensibly indicted along with Bursey for the crime of malicious destruction of property, and arrangements were made by Solicitor Foard for his apparent retention of a well-known local attorney as his defense counsel. The purpose of it all was to convince Bursey and others that Weatherford was in bad trouble so that he could maintain his appearance as an apparent codefendant while actually working for Strom and Foard. While there is no evidence of Strom's direct personal supervision of these machinations, it is clear from his testimony that he expected Weatherford to continue working as an undercover agent on the University of South Carolina campus and that he entrusted the details of the operation to Solicitor Foard.

During this period after the indictment of Bursey but before his trial, on at least two occasions Weatherford was present at meetings between Bursey and his attorney, C. Rauch Wise, at which the coming trial was discussed. Appellees urge that the intrusion was not deliberate but, instead, was simply additional necessary "cover." Since Bursey thought Weatherford was a friend and partner in crime, the latter could not avoid association without endangering revelation of his law enforcement role. For that reason only, appellees insist, Weatherford intruded upon the privacy of counseling. But SLED encountered bad luck,[2] and soon it became evident that Weatherford could no longer work effectively as an undercover agent. Upon the request of Solicitor Foard, Strom agreed to allow Weatherford to testify against Bursey, a turn of events which Strom testified he did not anticipate at the time of Bursey's arrest. Doubtless surprised and dismayed, Bursey was convicted on Weatherford's eyewitness testimony.

## II.

The district judge made the following findings of fact which are particularly relevant to the issues presented on appeal:

█ On two occasions following the employment of plaintiff's attorney, said attorney, the plaintiff and the defendant Weatherford met and the approaching trial was discussed. On neither of these occasions did the defendant Weatherford seek information from the plaintiff or his attorney, and on neither occasion did he initiate or ask for the meeting. . . .

---

1. After his conviction, Bursey fled the state. In October 1972 he was returned to South Carolina and served 18 months in prison.

Bursey did not appeal his conviction, nor did he seek post-conviction relief under either state law or federal habeas corpus.

2. Weatherford and other SLED agents were seen and recognized by one of Bursey's friends while they were vacationing at Hilton Head Island, South Carolina, during the summer of 1970. According to Weatherford's testimony, Strom gave him permission to go on that trip (App. 171) in spite of the obvious danger of "blowing" his cover.

■ That following the various meetings with the plaintiff and/or plaintiff's attorney nor at any time did the defendant Weatherford discuss with or pass on to defendant Strom, any agents of SLED, or to Solicitor John Foard and/or any of his staff any details or information regarding the plaintiff's trial plans, strategy or anything having to do with the criminal action pending against plaintiff.
. . .

■ From the beginning Weatherford advised plaintiff and plaintiff's attorney that Weatherford would obtain a severance of his case from that of the plaintiff. . . . On no occasion did Bursey or his attorney question the granting of a severance nor did they seem to concern themselves with whether the prosecutor would consent to a severance; although such consent is quite unusual where codefendants are charged with the same crime and proof will be from the same witnesses based upon identical facts. . . .

On these facts the district judge concluded that Bursey's constitutional rights had not been violated. He held in effect that: (1) there had been no "gross" intrusion upon the confidential relationship between Bursey and his lawyer because the participation in these conferences by Weatherford was not for the purpose of obtaining information concerning trial strategy, etc.; (2) Bursey had not been prejudiced as a result of Weatherford's presence during these conferences because their content had not been communicated to Solicitor Foard or Strom; and (3) Weatherford's actions, and especially his statements concerning severance of his trial, should "have put them [Bursey and his attorney] on notice that Weatherford might be an agent."

We disagree and conclude that on the facts as found by the district court Bursey's rights to effective assistance of counsel and a fair trial were violated.

### III.

### Effective Assistance of Counsel

■ Ours is an adversary system of justice. Deliberately planting an informer in the council of trial preparation, or an electronic monitor, is, of course, a "gross" intrusion upon the confidentiality of the lawyer-client relationship protected by the sixth amendment. The Supreme Court has said so:

Both of those cases[3] dealt with government intrusion of the grossest kind upon the confidential relationship between the defendant and his counsel.

*Hoffa v. United States*, 385 U.S. 293, 306, 87 S.Ct. 408, 416, 17 L.Ed.2d 374 (1966) (footnote added). But we think it does not follow, as appellees urge, that the sixth amendment is violated only where there has been a "gross" intrusion into the attorney-client relationship. We agree with the Third Circuit that it is a waste of time to undertake to decide whether an intrusion may be characterized as "gross,"[4] and that instead we should decide whether it is deliberate or inadvertent. Here it was not inadvertent but was knowingly permitted by the prosecution. That the intrusion was not for the purpose of obtaining information but was to maintain Weatherford's cover is, we think, of no consequence. We conclude that whenever the prosecution knowingly arranges or permits intrusion into the attorney-client relationship the right to counsel is sufficiently endangered to require reversal and a new trial.

We think *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), and *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), read together, establish such a per se rule. In *O'Brien*, a defendant's conversation concerning his forthcoming trial was monitored, but the conversation was not mentioned in any FBI report, nor were its contents communicated to

---

3. *Caldwell v. United States*, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), *cert. denied*, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955), and *Coplon v. United States*, 89 U.S.App.D.C. 103,

191 F.2d 749 (1951), *cert. denied*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

4. *United States v. Rispo*, 460 F.2d 965 (3d Cir. 1972).

attorneys for the Department of Justice, including those who prosecuted the case. Nevertheless, the Supreme Court summarily vacated the judgment below and remanded for a new trial.[5]

We put aside cases such as *United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974), and *United States v. Mosca*, 475 F.2d 1052 (2d Cir.), *cert. denied*, 412 U.S. 948, 93 S.Ct. 3003, 37 L.Ed.2d 1001 (1973), as clearly inapplicable. As the court in *Rosner* said, the fact situation there was wholly different from our situation—that of the "dummy defendant, the ultimate in the chicanery of unlawful intrusion . . .." *Rosner, supra* at 1227.

█ In the context of a civil suit, our holding that Bursey's sixth amendment right to counsel was violated sustains his suit irrespective of any showing of substantial prejudice to his defense. *Via v. Cliff*, 470 F.2d 271, 275 (3d Cir. 1972). However, prejudice may be very relevant to the issue of damages,[6] and we note the record establishes that Weatherford, fully acquainted with Bursey's trial strategy, talked with Solicitor Foard, who prosecuted the case, before trial and, of course, testified against Bursey. On these facts we find him to have been a member of the prosecution and further note that in an adversary system learning the plans of one's opponent, as Weatherford did, is generally thought to be worthwhile. Indeed, espionage rests upon such a premise.

### Fair Trial

█ We also hold that Bursey's rights to a fair trial were violated by the government's countenancing of Weatherford's role in this case. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady* the Court

held that the prosecution had a duty under the due process clause to insure that "criminal trials are fair" by disclosing evidence favorable to the defendant upon request. Here appellees insist that state officers may conceal the identity of an informant from a defendant during his trial preparation, that the informant can deny up through the day before his appearance at trial that he will testify against the defendant, and that he can then testify with devastating effect—all without impairing a fair trial. We think not. Deception is an appropriate instrument in crime solution. It is inappropriate and highly suspect when utilized *after* indictment with the effect of lulling a defendant into a false sense of security and thus denying him the opportunity (1) to consider whether plea bargaining might be the best course, (2) to do a background check on Weatherford for purposes of cross-examination, and (3) to attempt to counter the devastating impact of eyewitness identification.

We wholly disagree with the court below that Weatherford's conduct and his indication that he would seek a severance of his own trial should have put Bursey and his lawyer on notice "that Weatherford might be an agent." We think otherwise, but if we did not, we would nevertheless hold that whether Bursey and his lawyer should have been able to discern the deception is irrelevant. It is not a defense for appellees to show that in spite of the prosecutor's best efforts to conceal the truth a more astute victim might not have been deceived. Such an approach is a caricature of the *Brady* principle.

### IV.

The district court found that "there is no testimony connecting defendant Strom with any . . . acts allegedly committed by Weatherford . . .

---

**5.** We need not presently decide the correct rule in a case of inadvertent intrusion, but we are inclined to agree with the Third Circuit that in such a case there would be constitutional error requiring a new trial unless it is found to be harmless beyond a reasonable

doubt within the meaning of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *United States v. Rispo*, 460 F.2d 965, 977 (3d Cir. 1972).

**6.** *Via, supra* at 275 n.3.

[and] [s]ince the Doctrine of Respondeat Superior does not apply in 1983 cases, there could be no finding against defendant Strom." The court's factual finding is clearly erroneous and its legal analysis is incorrect.

■ The testimony of Strom at trial shows that (1) he participated in the decision to maintain Weatherford's cover; (2) he entrusted the details of perfecting the cover to Solicitor Foard, who was at his office the day of the arrest; and (3) that he concurred personally in the decision to allow Weatherford to testify. App. 109–11. Furthermore, according to appellees' own argument on appeal, contact of the type which occurred in this case and violated Bursey's constitutional rights was absolutely essential to the continued viability of Weatherford as an undercover agent in view of his "close relationship" with Bursey. Brief for Appellees at 4. This is therefore not at all a case involving liability through the principle of *respondeat superior.* That concept applies only to an innocent master being held vicariously liable for the acts of his servant. Here Strom's own decisions directly caused the violation of Bursey's constitutional rights, and that is a separate basis for liability. 2 F. Harper & F. James, The Law of Torts 1362, 1366 (1956); W. Prosser, Law of Torts 460 (4th ed. 1971). We here simply read 42 U.S.C. § 1983 "against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).[7]

### V.

■ On appeal Weatherford and Strom argue that in any case they cannot be found personally liable absent "a showing of bad faith, malice or recklessness."[8] We disagree.

In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court set down the following statement of the "qualified good faith" test in the specific context of school discipline:

[W]e hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected . . ..

*Id.* at 322, 95 S.Ct. at 1001. Although this test was stated specifically in the context of school discipline, we think it applicable to the conduct of appellees. Qualified immunity, of course, depends upon weighing the "scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action . . . ." *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). *See also O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975).

Because he proceeded to decide the case on other grounds, the district judge had no occasion to rule on *Strickland*-type good faith defense, and indeed, it

---

7. In *Barrow v. Bounds,* No. 74–1731 (4th Cir. July 1, 1974), we stated:

    We agree with the majority of federal courts which have considered the question that where, as here, money damages are sought pursuant to 42 U.S.C. § 1983, some personal involvement by the defendant is required; the doctrine of *respondeat superior* does not apply.

*Id.* at 2–3.

    We believe that the requirement of "personal involvement" is satisfied in this case by the actions and decisions of Strom. *See Curtis v.*

*Everette,* 489 F.2d 516, 521 (3d Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Wright v. McMann,* 460 F.2d 126, 134–35 (2d Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972).

8. We note that if the suit against Weatherford and Strom in their representative capacities is not barred by the eleventh amendment, the defense that they acted in good faith is inapplicable. *Thomas v. Ward,* 529 F.2d 916 (4th Cir. 1975).

does not appear that the defense was tendered below. It is, however, argued on appeal, and we think the appellees are entitled to assert it in further proceedings on remand.[9]

*Reversed and remanded.*

**9.** While we do not undertake to decide this question on the record before us, we note that the testimony given by Strom below may be read to mean that he "reasonably should have known that the action he took within his sphere of official responsibility would violate [Bursey's] constitutional rights . . .." *Wood, supra,* 420 U.S. at 322, 95 S.Ct. at 1001. He testified that he knew that sending an agent into a conference between a criminal defendant and his attorney would violate the defendant's sixth amendment rights. App. 116. He also testified that if he had known the day after Bursey's arrest that Weatherford was going to testify against him, he would have called him off the case and "wouldn't have had him to meet with them" (App. 114), but he then assented to Solicitor Foard's request that Weatherford testify against Bursey.