Walter GORDON, Appellant,

v.

William D. LEEKE, Commissioner; Joe Martin, Warden, Appellees.

Wayne Stephen YOUNG, Appellant,

v.

George H. COLLINS, Warden, et al., Appellees.

Nos. 77-1137, 77-1194.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1977.

Decided March 6, 1978.

Rehearing and Rehearing En Banc Denied May 2, 1978.

George Wm. Warren, IV, Richmond, Va., for appellants in 77–1137 and 77–1194.

Emmet H. Clair, Senior Asst. Atty. Gen., Columbia, S. C. (Daniel R. McLeod, Atty. Gen. of South Carolina, Katherine W. Hill, Asst. Atty. Gen., Columbia, S. C., Francis B. Burch, Atty. Gen. of Maryland, and Kathleen M. Sweeney, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees in 77–1137 and 77–1194.

Before WINTER, BUTZNER and HALL, Circuit Judges.

WINTER, Circuit Judge:

Because these appeals both concern the duty of a district court to assist a *pro se* prisoner-litigant in presenting a claim under 42 U.S.C. § 1983, we consolidated them for briefing and argument, and we decide them together. In No. 77–1137 (the South Carolina case), the plaintiff sought injunctive relief and money damages for alleged mistreatment by fellow inmates, acquiesced in by prison guards. He sued the warden and a commissioner of the Department of Correction. The district court required the defendants to supplement their pleadings and permitted plaintiff to supplement his, in an effort to determine if plaintiff had a meritorious cause of action. On the expanded pleadings and affidavits, the district court granted summary judgment for the defendants. In No. 77–1194 (the Maryland case), plaintiff sued the warden for damages for the loss of a watch allegedly stolen during a shakedown search. The district court permitted the filing of plaintiff's *pro*

*se* complaint, but granted the defendants' motion to dismiss under Rule 12(b)(6), F.R. Civ.P. It denied a subsequent motion for leave to amend.

We reverse in both cases.

## I.

### The South Carolina Case

Walter Gordon, convicted of a felony by a South Carolina state court, was placed under psychiatric observation in Cell Block Two at the Central Correctional Institution at Columbia, South Carolina, shortly after he began service of his sentence. On January 29, 1976, he was removed to Cell Block One, where he became part of the general population of the prison. On February 3, 1976, he was transferred to Kirkland Correctional Institution.

According to Gordon, he was subjected to a brutal beating, robbery and homosexual rape by four fellow inmates sometime between January 29 and February 3. He claims that the several attacks were witnessed by two correctional officers who did nothing to prevent or halt them. He further alleges that on February 1, 1976, he requested the Deputy Warden to provide him protection but that the Deputy Warden failed to act upon his request except to return him to the psychiatric cell block.

In addition, Gordon alleged that he was thereafter duped by another inmate, a certain Thomas Massey, into causing his family to send $50.00 to Massey who would prepare a writ that would "guarantee" Gordon's release.

Gordon's *pro se* complaint was filed against William D. Leeke, a commissioner of the South Carolina Department of Correction, and J. R. Martin, Warden of the Central Correctional Institution. As relief, Gordon sought an order that the administration at Central Correctional Institution be corrected, that defendants be fined, and that he be awarded money damages.

The complaint was hopelessly inadequate to allege a cause of action on which relief could be granted. Among other things, it failed to state either the date of the alleged

attack, whether it occurred in Cell Block One or Two, and the identity of either the attacking inmates or the acquiescent guards. The defendants answered, denying knowledge of any alleged abuse of Gordon, but conceding that the records disclosed that Massey received $50.00 from "J. H. Gordon." They raised certain legal defenses, pleaded a lack of knowledge of many of the essential facts, and moved to dismiss the complaint under Rule 12(b)(6). In a reply to this answer, Gordon conceded that Massey had refunded the $50.00 and this phase of Gordon's claims was effectively eliminated from the case.

The district court ruled that, with respect to the alleged assault, it could not dismiss the complaint under Rule 12(b)(6), nor could it grant summary judgment for defendants. At the same time, it ruled that it would not set the case for trial until the pleadings had been amplified so that it could determine if Gordon had alleged at least a colorable claim. Accordingly, the district court required defendants to supply additional information and it afforded Gordon the opportunity to respond thereto.

As a result of defendant's supplemental answer, with affidavits and exhibits thereto, and Gordon's verified responses, including an affidavit from another inmate, some of the details of Gordon's alleged cause of action emerged. In another interim ruling, the district court recited (1) that Gordon's statements fixed the date on which the assault on him had occurred as January 29, 1976; (2) that the affidavit of another inmate, Joe Harris, stated that he saw ("[i]n January, 1976, I don't remember the exact date,") four black inmates pull Gordon into a cell and beat him while two black officers stood by and watched without intervening; and (3) that Gordon, whose face was badly beaten, said about an hour later that he had been raped and robbed but made no claim to the prison authorities that he had been assaulted until April 7, 1976, although he had conversed with at least one official after the alleged incident. The district court stated its belief that Gordon's case was "nebulous, at best," and that his claim

of rape was highly suspect because he did not inform the prison authorities of it until April 7, 1976. Nonetheless, the district court directed Gordon to submit an affidavit identifying any persons whom he claimed raped him and directed defendants to submit an affidavit from the officer in charge of the cell block in which Gordon was incarcerated on January 29, 1976 as to any incident of the type which Gordon alleged.

In response, Gordon filed three affidavits. In the first, which was made by him, he noted that he had previously declined to name his attackers because of fears for his life; he then stated that, while he did not know the names of three of them, the name of the fourth was Bernard Brown. The second affidavit was that of Joe Harris who said that one of the guards who had witnessed the attack was Officer Reilly [sic] and that Harris could identify him by reason of previous contacts between the two of them. The third affidavit was that of David Johnson, another inmate, who said that Gordon had told him on the day of the incident that Gordon refused medical treatment for his face because he feared that disclosure of the incident might endanger his life.

In response, defendants filed a second and third supplemental answer supported by affidavits and prison records. Succinctly stated, these pleadings asserted that Assistant Correctional Supervisor M. Woodward, Jr., was in charge of the cell block in which Gordon was confined on the date of the alleged incident, but that Woodward had no knowledge, nor did he receive any report, of any attack on Gordon. Neville Riley, the correctional officer named by Harris, made an affidavit that he was the only person of that name employed as a correctional officer at the Central Correctional Institution but that he was not on duty on January 29, 1976 and was never aware that Gordon had been assaulted or in any way physically abused. The attendance records of the institution showing that Riley did not work on January 29 were attached.

On the pleadings, expanded as recited above, the district court made a final ruling. On its analysis of the facts, it candidly disclosed that "the Court is not fully persuaded that some type of assault did not occur." Notwithstanding, the court dismissed the complaint on the grounds that, factually, Gordon had alleged no cause of action against Leeke and Martin and, legally, they could not be held liable in an action under § 1983 for the misconduct of their subordinates under the doctrine of *respondeat superior*.

### The Maryland Case

Wayne Stephen Young sued George H. Collins, Warden of the Maryland Penitentiary, under § 1983 for money damages and injunctive relief. Young alleged that he was removed from his cell in the West Wing of the Penitentiary, as were all other prisoners in the West Wing, for a shakedown search conducted on September 10, 1976, and that during the search only corrective officers were present in the cell. When he was returned to his cell, he discovered that his watch and metal watchband had been stolen.

The defendant moved under Rule 12(b)(6) to dismiss the complaint, and the district court granted the motion. It noted that Young had alleged that "only corrections officers were in the wing at the time"; but it concluded that since Young failed to allege that the warden even knew that the search was taking place, let alone that he was involved in the theft, a claim for relief was not stated since the doctrine of *respondeat superior* was inapplicable. When Young thereafter moved to strike the order of dismissal to permit him "to prepare and submit an amended complaint establishing proper grounds for proceeding in the prosecution of this case," the district court denied the motion. It filed another memorandum justifying its denial on the ground that Young had not alleged, either in his original complaint or in his motion, any facts to show that the warden was personally involved, nor did Young allege any facts not set forth in the original complaint.

## II.

█ It is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice. *Rice v. Olson,* 324 U.S. 786, 791–92, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); *Holiday v. Johnston,* 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941). In one of the latest expressions on the subject, *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it was said that a complaint, *especially* a *pro se* complaint, should not be dismissed summarily unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" quoting from *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Our own decisions reflect these views. In *Burris v. State Department of Public Welfare of S. C.,* 491 F.2d 762 (4 Cir. 1974), we held that when plaintiff sued the South Carolina Department of Public Welfare alleging that his application for welfare was denied without a hearing but failing to allege a jurisdictional amount or other basis for federal jurisdiction, the district court should have apprised his *counsel* of the availability of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). We also recognized that the named *defendant was probably not a* "person" within the meaning of § 1983, but we directed the district court to consider the case on its merits "assuming that the complaint is amended to come within these statutes." 491 F.2d at 763. To like effect is *Johnson v. Mueller,* 415 F.2d 354 (4 Cir. 1969). In *Roseboro v. Garrison,* 528 F.2d 309 (4 Cir. 1975), we held that a district court must advise a *pro se* litigant of his right under the summary judgment rule to file opposing affidavits to defeat a defendant's motion for summary judgment.

The conclusions to be drawn from these decisions of the Supreme Court and our own, especially *Burris,* were well stated by the district court in *Canty v. City of Richmond, Va., Police Dept.,* 383 F.Supp. 1396 (E.D.Va.1974), *affirmed,* 526 F.2d 587 (4 Cir. 1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976):

[T]he Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs.

.    .    .    .    .

This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff appears *pro se.* In the great run of *pro se* cases, the issues are faintly articulated and often only dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the *pro se* plaintiff, radiations from *Burris* strongly suggest that the district court must examine the *pro se* complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendants' motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed. 383 F.Supp. at 1399–1400.

## III.

### *The South Carolina Case*

█ In the South Carolina case, in accordance with the principles discussed, the district court was altogether correct in declining to dismiss Gordon's complaint as originally drafted. It was theoretically possible that Gordon could prove thereunder a state of facts which would entitle him to recover, although it was certain that the precise basis for recovery was not alleged. By the same token, the district court was

correct in its initial determination not to grant summary judgment. What might be a meritorious claim on the part of a *pro se* litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action. We approve of the district court's efforts to obtain from Gordon and defendants a full disclosure of the facts of the case so that the district court could make an informed judgment on its merits.

Nevertheless, we reverse because we think the district court did not fully appreciate the additional facts that it obtained or recognize that these facts were disputed and could not be resolved on motion for summary judgment. From the additional pleadings, affidavits and exhibits, it appears that Gordon is asserting that he was brutalized on January 29, 1976 by fellow inmates, that the correctional officers, Neville Riley and another, were present and saw what was transpiring, but, nevertheless, that Riley and the other unknown guard declined to intervene and permitted the assault to continue. In our view, Gordon has thus alleged a cause of action under § 1983.

■ Of course, Gordon's claim for damages is against Riley and not the defendants he sued. *Bursey v. Weatherford,* 528 F.2d 483, 488 n. 7 (4 Cir. 1975). Dismissal or summary judgment as to the warden and the commissioner was proper.[1] But since the identity of Riley, one of the correctional officers allegedly involved, was finally established, the district court should have advised Gordon that, pursuant to Rule 19(a), F.R.Civ.P., Riley could have been made a defendant and given Gordon leave to join him.

■ Summary judgment as to Riley would be inappropriate on the present record. Gordon now claims that Riley was one of the correctional officers present at the January 29, 1976 attack and the allegation is supported by the affidavit of Gordon's fellow inmate, Joe Harris. Of course, Riley has stated by affidavit that he was not present and he has offered the institution's attendance logs to corroborate him. It may well be that Gordon has a weak case and little chance of recovery from Riley, but the material fact of Riley's presence or absence is disputed and summary judgment is inappropriate. Rule 56(c), F.R.Civ.P.

### The Maryland Case

■ Of course, Young did not allege a claim for damages upon which relief could be granted against the warden of the Maryland Penitentiary. *Bursey v. Weatherford, supra.*[2] But we think that it was error to deny a *pro se* civil rights litigant leave to amend his complaint even though he did not state in his motion for leave how he would cure the deficiencies in his pleading.

■ It would seem to us that, on the basis of his allegations, Young may have a claim for damages against the guard or guards who searched his cell under § 1983. Since Young thus alleged facts under which a meritorious claim might be proved, his complaint should not have been dismissed; Young should have been granted the opportunity to disclose the identity of the searchers, if known to him, and to have joined them as defendants in substitution for the warden; or, if Young did not know their identity, the court should have afforded him the opportunity to discover them from the warden, either from his personal knowledge, the personal knowledge of his subordinates or the records of the institution, and advised Young how to proceed. A district court is not required to act as an advocate for a *pro se* litigant; but when such a litigant has alleged a cause of action which may be meritorious against a person or

---

1. Since Gordon's various pleadings do not suggest that the incident of which he complains was anything other than an isolated one or that it resulted from any administrative policy established or maintained by the warden or the commissioner, we see no ground for injunctive relief against either.

2. In our view, Young's allegations were insufficient to state a claim for injunctive relief against the warden. See n. 1, *supra.*

persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed and direct or permit amendment of the pleadings to bring that person or persons before the court. If it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him.[3]

In accordance with the foregoing, we reverse the judgments in both cases and remand them for further proceedings in accordance with the views we have expressed.

*REVERSED AND REMANDED.*

K. K. HALL, Circuit Judge, dissenting:

## I.

### THE DISMISSALS

In the South Carolina case, while I believe that the district judge might better have advised Gordon to join Riley as a defendant and have given him leave to do so, I would nevertheless affirm the dismissals in each case because I believe on the record presented to it each district court properly held that the respective plaintiffs had failed to properly state any cause of action under *respondeat superior* against the named parties defendant. To me, *Owens v. Oakes,* 568 F.2d 355 (4 Cir. 1978) is controlling in both cases and should be followed. The suit against Superintendent Oakes was not different from the suits filed by Gordon and Young here.

However, to me, neither dismissal creates *res judicata* or collateral estoppel effects which would preclude either Gordon or Young, or both of them from reinstituting a different suit against the culpable parties whether known or unknown, yet identifiable in some manner by reasonable due diligence assuming their respective suits are not otherwise time-barred by the appropriate statute of limitations.

**3.** We agree with our dissenting co-panelist that, rather than to dismiss a claim having colorable merit but pleaded insufficiently, a district court should appoint counsel to assist the

## II.

### THE DUTY TO ASSIST THE LITIGANT

At the outset of the opinion, the majority notes that these appeals present a unified question concerning " . . . the duty of a district court to *assist* a *pro se* prisoner-litigant in presenting a claim under 42 U.S.C. § 1983" [Emphasis added]. When such a "duty" is confined to the particular facts presented in these appeals, my reading of the majority opinion concerning the "duty to assist" a litigant becomes, in reality, nothing more than a pragmatic application of the rule favoring liberality in the amendments to pleadings, and especially complaints, under Federal Rule of Civil Procedure 15(a) together with the broad construction to be given to the pleadings filed by a *pro se* prisoner litigant in civil actions as required by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

The majority properly states and carefully indicates that a district court is not required to act as an advocate for a *pro se* litigant. I wholeheartedly concur with that express limitation placed upon the majority's own holding. To me, the duty to "construe liberally" and perhaps "to advise" is the court's. The duty to "present" and to "advocate" is that of the litigant or his attorney.

Such a limitation strikes a sound balance between advocacy and judicial impartiality. Neither *Haines v. Kerner, supra,* nor our decision in *Burris v. State Department of Public Welfare of South Carolina,* 491 F.2d 762 (4th Cir. 1974), nor our unpublished *per curiam* affirmance of *Canty v. City of Richmond, Va. Police Dept.,* 383 F.Supp. 1396 (E.D.Va.1974), *aff'd,* 526 F.2d 587 (4th Cir. 1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976), created any duty upon a district court to "assist" a *pro se* litigant, as opposed to merely "advising"

*pro se* litigant. The difficulty here is that neither was counsel for Young appointed, nor was Young advised of the proper procedures to develop his claim.

him as the majority notes.[1] Further, the district court in *Canty,* like the majority here, expressly disavowed any requirement that " . . . the district courts [are] to assume the role of [an] advocate for the *pro se* plaintiff, . . . ." *Id.,* at 383 F.Supp. 1399–1400. This logically follows when *Haines, supra,* and *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), are read together.

In *Bounds,* the Supreme Court held that an incarcerated *pro se* litigant had a fundamental constitutional right of access to the courts through the access to an adequate law library or from the adequate legal assistance of persons trained in the law. The decision both in this court and in the Supreme Court was clearly in the disjunctive. *Smith v. Bounds,* 538 F.2d 541, 544 (4th Cir. 1975); *Bounds v. Smith,* 430 U.S. 817, 827, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). *Haines v. Kerner, supra,* requires no more than when an individual litigant chooses to proceed *pro se* and utilizes his resources (now including legal references) to file pleadings, or other documents, a district court must construe them broadly. 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652.[2]

## III.

## COUNSEL

Should a district court, at some juncture, believe that a case is "exceptional," it is clearly empowered, in its discretion, to appoint counsel to assist the litigant in pursuing his or her respective civil rights claim. 28 U.S.C. § 1915(d); *Cook v. Bounds,* 518 F.2d 779 (4th Cir. 1975).

With the entry of counsel, all aspects of the underlying cause of action could be clarified, *Loper v. Beto,* 405 U.S. 473, 476 at n. 2, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and the proper parties could be brought before the court, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 389 at n. 2, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

During the course of the litigation, should discovery become necessary, and hearings or a trial required later,[3] counsel will certainly be in a far better position to assist the litigant and the court than will the judge who chooses instead to struggle with

---

**1.** In part III of the majority opinion, in the section devoted to the Maryland case, the court holds in part that:

> . . . when [a *pro se*] litigant has alleged a cause of action which may be meritorious against a person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed and *direct* or permit amendment of the pleadings to bring that person or persons before the court. * *

Emphasis added.
To the extent that the majority creates a duty upon the district courts to "direct" an amendment to the pleadings, I read the majority additionally to hold that if the litigant fails to comply with the court's "directives," embodied in an appropriate order, of which the litigant has notice, that the suit may be dismissed. See Rule 41(b), Federal Rules of Civil Procedure. Another alternative open to and currently utilized by some district courts in this Circuit is the conditional dismissal, subject to amendment of the defective pleading by the *pro se* litigant, upon pain of final dismissal for failure to cure the legal deficiency or shortcomings in his suit. I would likewise approve of this pro-

cedural vehicle for managing a *pro se* suit. *See Recommended Procedures for Handling Prisoner Civil Rights Cases in Federal Courts,* Federal Judicial Center, Tentative Report No. 2, May 20, 1977, at 55–8 (cited hereafter as "Tentative Report;" *Covington v. Cole,* 528 F.2d 1365, 1372–3 (5th Cir. 1976).

**2.** Albeit in the context of *pro se* criminal representation, the Ninth Circuit has held that *Haines* was not a "[case] for all seasons" invoking a "duty to assist" an individual proceeding *pro se. See United States v. Trapnell,* 512 F.2d 10 (9th Cir. 1975).

**3.** In the somewhat analogous field of federal and state habeas corpus proceedings, in which litigants frequently proceed *pro se,* counsel *may* be appointed to aid the litigant and the court in the discovery process and during evidentiary hearings which may be conducted. See Rules 6(a) and 8(c) of the *Rules Governing Section 2254 [and separately the Section] 2255 Proceedings for the United States District Courts,* 28 U.S.C.A. foll. §§ 2254, 2255 (effective Feb. 1, 1977). These rules pointedly demonstrate the sound discretion vested in the district courts to consider appointment of counsel when it will aid both the litigant and the court.

an unlearned and sometimes barely literate prisoner.[4] Prevailing counsel could be awarded attorneys fees in appropriate circumstances under the Civil Rights Attorney Fee Awards Act of 1976, now codified as 42 U.S.C. § 1988.

Finally, should individual counsel be unavailable for any reason, certain states, including South Carolina, now have or are developing programs for inmate counseling and legal representation in various areas of prison life including *pro se* civil rights suits. The Supreme Court has recognized the role counsel can play in assisting prisoners in properly pursuing their grievances, *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 1499–1500, 52 L.Ed.2d 72, at nn. 19–20, and the district courts may be able to draw from this source of attorneys when appropriate.[5]

## IV.

### AMENDMENTS OF PRO SE FORMS

While it will not cure the problems presented in the cases now on appeal, district courts might want to consider amendments to the standard preprinted forms utilized by prisoners in *pro se* civil rights suits. Therein, on any cover page of instructions, or on the portion of the heading of the suit, underneath where the defendants are to be named, some language could be added in plain English such as the following:

> You must name the people as defendants whom you contend hurt you or caused you harm in some way. For example, if you are assaulted by guards,

their names must be stated if you know them, or in the alternative you must make reference to them in some way. If you cannot name them, say so, and state why.

> In your complaint, you must state the *facts* (who, what, when, where and how) that support your contentions, not mere conclusions.

> If you contend that the warden, or some other supervisory official or their subordinates caused you harm, you likewise must name them if known, or you must make reference to them in some way. If you cannot name them, say so and state why. As noted, in your complaint, you also must state the *facts* (who, what, when, where and how) that support your contentions not mere conclusions.

> *Note:* In order for a supervisory official, or the warden to be liable for any harm you are claiming, you must allege and have some proof that that person either expressly or implicitly authorized the conduct which you contend harmed you, or have acquiesced in it in some way.[6]

## V.

### CONCLUSION

These appeals do not present the ever-present problem of the patently frivolous or repetitive prisoners' rights cases which tax

---

**4.** Obviously, I do not urge wholesale appointment of counsel in all civil rights cases, nor do I urge relaxation of the standards set forth in *Cook v. Bounds, supra.* What I do recognize is that many pragmatic problems beset a district judge in the administration of a *pro se* case beyond simply allowing a prisoner to file and amend his suit. For example, the security problem in prisoner cases undoubtedly presents a problem, *Cook v. Bounds, supra,* 518 F.2d at 780 n. 1, which the appointment of counsel can help alleviate, *United States v. Madden,* 352 F.2d 792, 793 at n. 1 (9th Cir. 1965). *See also Ballard v. Spradley,* 557 F.2d 476 (5th Cir. 1977).

**5.** In South Carolina, pursuant to LEAA funding grants, now state funded, a clinic has been

established which operates under the auspices of the South Carolina Law School. Preliminary findings indicate a dramatic statistical effect in the reduction of meritless prisoner cases, both post-conviction and under § 1983, and the clinic has undertaken the prosecution of at least one significant prisoners' rights § 1983 suit. *Six Month Narrative Report, Consortium of States to Furnish Legal Counsel to Prisoners,* LEAA Grant 76–DF–99–0077, October 1, 1976 —March 31, 1977, Statistical Reports, South Carolina, p. 2.

**6.** *See* Tentative Report at 43–55, and recommended forms, at 83–5; *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977).

an already overburdened court system.[7] My concern lies instead with the delicate procedural balance to be struck between the settled right of an indigent to proceed *pro se* in the courts, the duty of such a litigant to proceed by complying with certain of the basic rules of legal procedure and substantive law, and the role the court is to impartially play in monitoring such litigation throughout.[8] In striking that balance, no matter how well-intentioned a judge may be, once he assumes the role of an "advocate" for a *pro se* litigant, he or she will lose the respect of either the *pro se* prisoner litigant, or the defendants whom he has sued or both.

To the extent that a duty to "assist" can be read into the penumbra of the majority decision, I vigorously, and most respectfully dissent.

---

7. The district courts have, at their ready disposal, many procedural mechanisms to forestall the abuse of *pro se* suits. While not exhaustive, a listing of those procedural tools are set forth as follows: 28 U.S.C. § 1915(d) (dismissal where action is frivolous or malicious); 28 U.S.C. § 1915(a) and *Graham v. Riddle,* 554 F.2d 133 (4th Cir. 1977) (right to proceed *in forma pauperis* conditioned upon a showing of good cause, and upon payment of the filing fee); *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (successive claims ordinarily need not be reviewed); and *Carroll v. Brown,* 560 F.2d 1177 (4th Cir. 1977) (summary judgment).

8. *See e. g. Graham v. Riddle, supra* 554 F.2d at 134; *Caviness v. Somers,* 235 F.2d 455, 456 (4th Cir. 1956); *Fletcher v. Young,* 222 F.2d 222, 224 (4th Cir. 1955).