**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK LEE GARRETT,
<u>Plaintiff-Appellant,</u>

v.

DIANE ELKO, RN; MARY ANNE

ALVIG, in her capacity as Personal
Representative of Olav H. Alvig,
M.D.,
<u>Defendants-Appellees.</u>

No. 95-7939

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-95-494-R)

Argued: June 4, 1997

Decided: August 12, 1997

Before WILLIAMS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion. Judge
Williams wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Claudia Theda Salomon, MAYS & VALENTINE, Rich-
mond, Virginia for Appellant. Peter Duane Vieth, WOOTEN &
HART, P.C., Roanoke, Virginia, for Appellees. **ON BRIEF:** George

A. Somerville, MAYS & VALENTINE, Richmond, Virginia for Appellant. L. Thompson Hanes, WOOTEN & HART, P.C., Roanoke, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Frank Garrett, an inmate at the Dillwyn Correctional Center in Virginia, filed a pro se complaint in district court seeking monetary and injunctive relief under 42 U.S.C. § 1983. Garrett claims that the prison's medical personnel violated his eighth amendment rights by failing to provide him with adequate medical treatment for his hernia. The defendants, the estate of Olav Alvig, M.D., and Diane Elko, R.N., moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Garrett filed a response. The district court granted the defendants' motion. Because Garrett should be afforded an opportunity to amend his complaint, we vacate and remand with instructions to appoint counsel.

I

We review de novo a dismissal for failure to state a claim. Meaige v. Hartley Marine Corp., 925 F.2d 700, 702 (4th Cir. 1991). A dismissal for failure to state a claim should be upheld only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When reviewing a motion to dismiss, we assume the facts alleged in the complaint are true, McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996), and we construe the allegations in the light most favorable to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to

2

see whether they could provide a basis for relief. <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1977); <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982); <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). In addition, in order to determine whether the claim of a <u>pro se</u> plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff. <u>Gordon</u>, 574 F.2d at 1149-51.

After the defendants moved to dismiss, Garrett filed a response to the motion, a motion for summary judgment, an affidavit, and copies of grievances he had filed with the prison. We look to these materials, along with the complaint, to piece together the alleged facts underlying Garrett's claim.

II

Garrett uses a wheelchair and is diabetic. While in prison, he developed a hernia by pushing himself in the wheelchair. Although he alleges that he has a hiatal hernia, the appellees assert that his medical records indicate a ventral or incisional hernia. The distinction is immaterial for present purposes. Since at least 1991, Garrett has complained about the pain caused by the hernia and has sought treatment, including surgery. Although he has been examined by various physicians, none have attempted surgery despite his complaints of intense pain, anxiety, and limited mobility. The basis of Garrett's claim here is that the medical staff ignored his complaints and delayed surgery for several years, and, as a result, the hernia has now grown too large for surgery. This lack of timely treatment has left Garrett in an unfortunate predicament in which he faces the possibility of death whether or not he undergoes surgery.

Sometime in 1994, Garrett was taken to a facility in Greenville to have surgery, but after he arrived the attending physician canceled the procedure without giving him an explanation. In 1995, Garrett asked Elko why the surgery had not been performed in Greenville. After checking his medical records, Elko told him that the doctor had decided not to perform surgery both because the procedure is classified as "elective" and because he is diabetic.

Also in 1995, Alvig examined Garrett. Alvig told Garrett that he would recommend surgery. Over a month later, after Garrett made

3

additional inquiries and complaints, he was sent to a specialist. After examining Garrett, the specialist concluded that, although corrective surgery would have been possible earlier, surgery at that time would jeopardize the patient's life due to the hernia's large size. At the time, the hernia measured nine by nine by four inches. In addition, Garrett was told that he might die if the hernia "flips" or ruptures.

## III

In the defendants' motion to dismiss, they argued that Garrett failed to state an actionable claim. They asserted that the facts he alleges do not demonstrate deliberate indifference to a serious medical condition, but rather show at best that he disagrees with his doctors' medical judgments. Additionally, they contend Garrett's allegations do not suggest that either of them, both of whom first treated Garrett in 1995, engaged in any improper conduct.

The district court granted the defendants motion. The court found that Garrett's claim amounted to one of mere negligence and that the denial of "elective" surgery cannot amount to a deprivation of necessary medical treatment.

In order for Garrett to state an eighth amendment claim, he must allege facts that show the prison's medical staff acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In other words, he must allege both that his medical needs were objectively serious and that the medical staff acted with deliberate indifference to those needs. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Construed liberally, Garrett's allegations state a prima facie eighth amendment violation. As the district court concluded, Garrett's medical needs are serious. According to his allegations, he suffers from a large hernia that has caused him severe pain and limited his mobility since 1991. It now threatens his life. Garrett has also alleged that the medical staff acted with deliberate indifference. He states that the attending physicians refused for several years to perform or authorize the surgery necessary to address his condition. Garrett reports that the specialist determined that, although corrective surgery would have been possible earlier, the hernia has become inoperable as a result of

4

the delay. In addition, Garrett alleges that the surgery was delayed, in part, because the prison classified the procedure as "elective."

Contrary to the view adopted by the district court, prison officials cannot avoid eighth amendment liability for denying a prisoner treatment necessary to address a serious medical need simply by labeling the treatment "elective." Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 348 n.32 (3d Cir. 1987); Delker v. Maass, 843 F. Supp. 1390, 1399 (D. Or. 1994). Otherwise, prison officials could evade effective judicial review of eighth amendment claims by using a label. Delker, 843 F. Supp. at 1398. Instead, proper eighth amendment inquiry should involve looking beyond labels and examining the substance of the claim presented.

IV

Although Garrett has alleged that the attending medical personnel were deliberately indifferent to his serious medical needs, he failed to name those personnel, except Alvig and Elko, as defendants. The defendants contend that the materials Garrett submitted in response to the motion to dismiss demonstrate that neither Alvig nor Elko violated Garrett's rights. Alvig and Elko first treated Garrett in 1995. They argue that Elko did not have the authority to recommend surgery and therefore cannot be responsible for any delay. They also argue that Alvig did not delay Garrett's treatment. They point out that he referred Garrett to a specialist within a few months of their first meeting.

Based on the fragmentary record before the court, it is unclear exactly what roles the present defendants played in Garrett's treatment. If Elko and Alvig's estate are named in an amended complaint, they can reassert the same arguments on remand and provide affidavits or other evidence to support their position.

As the defendants point out, Garrett's claims, if any, may be against the personnel who preceded Alvig and Elko. When a pro se litigant "has alleged a cause of action which may be meritorious against a person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or per-

5

sons against whom the claim is asserted, advise him how to proceed and direct or permit amendment of the pleadings to bring that person or persons before the court." Gordon, 574 F.2d at 1152-53.

V

We remand to the district court with instructions to allow Garrett to amend his complaint and to appoint counsel to assist him. Gordon, 574 F.2d at 1152-53.

VACATED AND REMANDED

WILLIAMS, Circuit Judge, dissenting:

I dissent. First, I believe that Diane Elko and the estate of Dr. Olav H. Alvig should be dismissed from the case. According to Garrett's opposition to defendants' motion to dismiss, Elko, the chief nurse and administrator of the medical staff at Dillwyn Correctional Center, did no more than inform Garrett "that surgery to repair is `elective' and that the prison did not provide `elective' procedures." (J.A. at 19.) Garrett further explained, in an attachment to his motion for summary judgment, that "Nurse Elko[ ] reviewed my medical records and her reply was: my surgery was `elective,' and because I am also a diabetic, prison doctors at Greenville [sic] Medical[ ] would not do the needed surgery." (J.A. at 45.) There is no allegation that Elko had the authority to approve, recommend, or deny surgery. Rather, Garrett alleges only that Elko informed him, at his request, of the decision made by her superiors.

Similarly, Garrett alleges only that Alvig told him "that [the hernia] is to [sic] big now to do surgery."[1] (J.A. at 40.) Even if Garrett could make out an Eighth Amendment claim for the initial denial of surgery

_____

[1] In a different document, Garrett claims that Alvig recommended surgery and referred Garrett to a specialist. The specialist, in turn, concluded that the hernia had grown too large to be safely treated. The majority apparently accepts this version of events, which, in my view, is even less supportive of Garrett's Eighth Amendment claim. It would strain credulity to sustain a claim under the Eighth Amendment against a doctor who recommended the very surgery now sought by Garrett.

6

when the hernia was small enough to be safely corrected, it is undisputed that Alvig did not examine Garrett until the hernia had grown to its present size. Therefore, even though Garrett may now have a "serious medical need," see Estelle v. Gamble, 429 U.S. 97, 104 (1976), it cannot seriously be maintained that Alvig acted with "deliberate indifference," id. In our circuit,"[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Here, Garrett's present condition is unchallenged-- surgery would endanger his life. I, for one, am unwilling to countenance a rule establishing that a physician's decision to decline to perform a life-threatening procedure is sufficiently "incompetent, inadequate, or excessive" to satisfy this standard. Consequently, I disagree with the majority's assertion that "it is unclear exactly what roles [Alvig and Elko] played in Garrett's treatment." Ante at 8. On the contrary, it is clear that Alvig and Elko played only a limited role in Garrett's treatment, and that role did not violate the Eighth Amendment.

Second, the relaxed pleading requirements applicable to pro se complaints should not be allowed to rescue Garrett's action. As for the claims against Elko and Alvig, Garrett has been furnished adequate opportunity to amend his complaint and develop the factual allegations. Most importantly, on the same day that defendants' motion to dismiss was filed, the district court issued the notice required under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Garrett that his action might be dismissed if he failed to respond. Garrett did respond, by filing a motion for summary judgment with a memorandum in support, an affidavit, and several exhibits. In my view, the Roseboro notice, coupled with Garrett's extensive response, fully satisfied the district court's obligation to afford Garrett an opportunity to particularize his allegations. Moreover, I believe that remand to allow Garrett to add additional defendants is unwarranted. As recently noted by this court, we should"remain cautious not to `transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" Strickler v. Waters, 989 F.2d 1375, 1389 (4th Cir. 1993) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985)). Here, I believe that

the majority comes perilously close to forcing the district court to exceed its "legitimate advisory role," and I would decline to afford Garrett yet another opportunity to rectify his defective complaint.**2**

Third, even assuming the propriety of remand to allow Garrett to further tinker with his complaint, I believe it is inappropriate to direct the district court to appoint counsel. In Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978), we held that "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Id. at 1153. Later, in Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), we made clear that the source of the authority to appoint counsel in a § 1983 action was 28 U.S.C.A. § 1915(d) (West 1994) (now amended and renumbered as 28 U.S.C.A. § 1915(e)(1) (West Supp. 1997)). When Whisenant was decided, § 1915(d) provided that "`[t]he court may request an attorney to represent any such person unable to employ counsel.'" Whisenant, 739 F.2d at 163 n.3 (quoting old § 1915(d)). Subsequently, however, Whisenant was abrogated by Mallard v. United States Dist. Court, 490 U.S. 296 (1989), which held that § 1915(d) does not authorize compulsory appointment of counsel. Id. at 298; see also Ivey v. Harney, 47 F.3d 181, 185 (7th Cir. 1995) ("We know from [Mallard] that a court may not order even a member of its bar to donate services to a plaintiff in an action under 42 U.S.C. § 1983."). Therefore, to the extent the majority relies on Gordon in ordering the district court to appoint counsel, it is in error. At most, the district court may be ordered to "request" counsel to represent Garrett.

_____

**2** Although the issue is not, and should not be, before us, I am compelled to note that Garrett's potential claims against other, as-yet unnamed defendants will likely be barred by the statute of limitations. Because § 1983 does not explicitly provide its own statute of limitations, we borrow the personal injury statute of limitations from the relevant state. See Wilson v. Garcia, 471 U.S. 261, 266-69 (1985). Virginia applies a two-year statute of limitations to personal injury claims. See Va. Code Ann. § 8.01-243(A) (Michie 1992); see also Lewis v. Richmond City Police Dept., 947 F.2d 733, 735 (4th Cir. 1991). Garrett filed his complaint on May 24, 1995, yet he alleges that he first complained about the hernia in 1991. Therefore, any of his potential claims against unnamed defendants that arose before May 24, 1993, are likely barred by the limitations period.

In any event, we also explained in <u>Whisenant</u> that the district court's power to "appoint" -- now "request" -- counsel is discretionary, and that the district court abuses this discretion in declining to appoint counsel only when the "indigent plaintiff presents exceptional circumstances." <u>See Whisenant</u>, 739 F.2d at 163. The majority mentions neither constraint, but instead simply inserts into the last paragraph of its opinion an order for the appointment of counsel. Because I am convinced that Garrett's claim was not colorable, that Garrett had the capacity to present his claim, and that these are not "exceptional circumstances," I am also convinced that the district court did not abuse its discretion in declining to request the assistance of counsel.

In short, Garrett's claims against Elko and Alvig are fully developed and clearly inadequate, and should therefore be dismissed. I would also decline to remand the case to allow Garrett to amend his complaint to add additional defendants. Finally, I would not direct the district court to "request," much less "appoint," counsel to assist Garrett on remand.

Accordingly, I dissent.

9