UNITED STATES of America,
Appellee,

v.

Jonie Gardner LEE, Appellant.

No. 8615.

United States Court of Appeals
Fourth Circuit.

Argued June 8, 1962.

Decided Sept. 29, 1962.

William A. Taylor, Dunn, N. C., and John A. Wilkinson, Washington, N. C., for appellant.

Alton T. Cummings, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on the brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and CRAVEN, District Judge.

HAYNSWORTH, Circuit Judge.

In this appeal from a conviction under the Internal Revenue laws relating to intoxicating liquors, the question arises out of a denial of a motion to suppress evidence of the presence in the defendant's home of a still, contraband sugar and untaxed whisky. The motion was denied on its merits and upon the additional ground that it was untimely under a local rule.[1] We need not consider the validity of the local rule as here applied, for we find no illegality in the search.

Before the occurrence of any of the other events with which we are concerned, Jonie Gardner Lee was indicted by a federal grand jury for offenses under the Internal Revenue laws relating to whisky, and an arrest warrant issued from the court, Gardner being then at liberty. On February 16, 1961, three officers, armed with the warrant, went to the defendant's home to arrest him. One of them, Blake, was stationed at the rear of the residence, apparently for the purpose of guarding against an escape through the rear entrance, while the other two, Vassar and Richardson, approached the front door. The defendant responded to the knock at the front door, and the officers identified themselves and announced their purpose. The defendant unlatched the screen door and invited them into his livingroom. There Richardson read the warrant to the defendant, while Vassar, during or immediately after the reading of the warrant, proceeded to the rear door of the house to admit Blake, after which Vassar and Blake returned to the livingroom. On this mission, however, Vassar and Blake had noticed, in plain view in the kitchen, three 60-pound bales of sugar and, in another room, two cases of half gallon fruit jars and another 20 pounds of sugar, a total of 200 pounds. They had also tried the closed door to one of the rooms of the house and found that the door was locked.

After the defendant's arrest was effected and Vassar had returned to the livingroom with Blake, the defendant was searched. Some keys were found in his possession and, with one of them, the locked door was unlocked and opened. Within the room there was a 200-gallon still and associated equipment and one gallon of illicit whisky.

This discovery led to another indictment, in which the defendant was charged with the unlawful possession of the still and associated equipment, the sugar and the untaxed whisky.

In the trial on the second indictment, Lee's only defense was that evidence of his possession of the still and the contraband was inadmissible because it had been obtained in the course of an unlawful search. In support of this objection, the defendant contends that no search of his house was warranted by the arrest. He says the arrest warrant was related to offenses and transactions which had been completed, and the officers had no specific information that there was anything in the house related to or arising out of the earlier offenses. He thus reasons that any search whatever must have been a general one for evidence of the

---

[1] The motion was filed the day before the trial. Though the motion had been prepared several weeks earlier, its filing the day before the trial was a literal, if ungenerous, compliance with the requirement of Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. There was a local rule, however, requiring that such motions be filed at least five days before arraignment, though, for good cause shown, later filings may be allowed.

commission of some other crime than those charged in the earlier indictment, and that such a search was unreasonable and unlawful.

We find the contention unacceptable.

■ There is no question of the legality of the arrest or of the presence of the officers in the defendant's livingroom. Before gaining admission to the livingroom, they had properly identified themselves and announced their purpose of serving the arrest warrant and taking the defendant into custody, after which the defendant unlatched the screen door and invited them into his house. Once there, when the arrest was effected in the house, the officers had a perfect right to conduct a reasonable search of the premises for illegal whisky or other fruits of the earlier crimes. Indeed, the whisky that was found in the locked room may well have been among the fruits of the earlier crimes, for the still that was found there was not yet completely set up.

■■ Moreover, incident to the lawful arrest, the officers had a perfect right to take security measures against a rear door escape, and, having done so and after having effected the arrest in the house, there was nothing unreasonable or unlawful about the conduct of one of the officers in going to the rear of the house to admit his fellow or about the return of the two through the house to the livingroom. Passing through the house for that purpose only was not a search, and their observation of the sugar and the half gallon jars, all of which were in plain view, was not a search.[2] If Vassar went to the rear of the house for the dual purpose of admitting Blake and of searching to the extent that he could while serving his first purpose, the search was plainly not unreasonable.

■ Nor did the search become unreasonable when the locked door was opened with the aid of the key obtained from the defendant's person. Since every-

thing else in the house was apparently open, the officers had every reason to believe that if any fruits of the earlier crimes were in the house, they would likely find them in the locked room. By that time, the officers also had probable cause to believe that an offense was then being committed in their presence, for the quantity of sugar they had observed was far in excess of that which one would expect to be on hand for domestic use in midwinter, far in advance of any season of canning or preserving fruits. Certainly, the possession of such a quantity of sugar by a known bootlegger, then being taken into custody on account of earlier offenses, and in association with his possession at the same time of two cases of half gallon fruit jars, furnishes strong reason for the belief by the officers that the defendant possessed the jars and the sugar with the intention of using them in violation of the revenue laws, and that, hence, his possession of them was a crime then being committed in their presence. The reasonable belief of the officers that an offense was then being committed in their presence furnished all the more reason to believe that contraband was to be found behind the locked door.

■■ The use of any force in a search or of the turning of any lock without the consent of the possessor is a circumstance which may bear heavily upon the reasonableness of the search. That was certainly true in Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. But there the fact that one of the defendants was compelled to open the desk and the safe was aggravated by other facts, for there the officers were acting upon an invalid arrest warrant which they misrepresented to be a search warrant. They had no reason to believe that contraband was within the room or any other offense was being committed in their presence, and the search that was conducted was a very extensive and general ransacking of the office and of the desk, the safe and the

---

2. Petteway v. United States, 4 Cir., 261 F.2d 53.

filing cases in it. Here, in contrast, there was no general rummaging through the defendant's personal papers or among his personal effects. The officers were looking only for additional contraband, and only contraband was seized. All that can be said in support of the contention that the search was unreasonable was that the lock was turned with a key which had been removed from the defendant's person after his lawful arrest. That fact alone does not warrant a conclusion that the search was unreasonable.[3] This case is not like Drayton v. United States, 5 Cir., 205 F.2d 35, where the search was held unreasonable not just because the locked door was opened with a key which had been removed from the defendant's person, but because the locked room was far removed from the place of the arrest. Here, in contrast, the locked room was in close proximity to the room in which the arrest was effected and the entire house, in which only the defendant and his wife appeared to reside, was under the immediate control and possession of the defendant at the time of his arrest in it. The search did not extend over an unreasonable area,[4] as it did in Drayton.

■■■ It is true, of course, that officers effecting a lawful arrest have no right to set about in a general search for evidence of other crime than that for which the arrest was made, and they cannot use a lawful arrest as a pretext for the conduct of such a general search for evidence of other crime.[5] Those principles have no applicability here, however, for the only evidence is that the officers' initial intent was to search only for fruits of the earlier crimes, and there is no suggestion whatever that the arrest pursuant to the warrant issued on the basis of the grand jury indictment was pretensive and effected in order to afford the officers an opportunity to search for evidence of other crime.

■■■ It is well settled that when the officers in the conduct of a lawful search discover contraband or other things subject to seizure, they need not ignore what they discover, though the things discovered were not the things for which they were searching or for which they were entitled to search. The fact the officers here could not have initiated a general search for the purpose of discovering evidence of crimes other than those for which the defendant was arrested does not mean they could not notice or, after notice, seize the contraband they discovered in the course of their lawful search, though the contraband had or might have had no connection whatever with the earlier offense which occasioned the arrest.[6]

Of course, the fact that the defendant was lawfully arrested within his home where the search occurred distinguishes this case from such cases as Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514.

Since the search was lawful, the officers were properly permitted to testify to the presence of the contraband in the house and in the defendant's possession at the time of their lawful execution of the arrest warrant.

Affirmed.

---

3. Martin v. United States, 5 Cir., 155 F. 2d 503; and see United States v. Haith, 4 Cir., 297 F.2d 65. In Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L. Ed. 1453, the Court relied upon a finding that the defendant, after his arrest, succumbed to permissible persuasion and consented to the unlocking of the door to the inner room. There was no such consent, however, when, immediately after the arrest, the officers demanded and obtained the keys to the tin boxes on the gasoline pumps, which they then unlocked and inventoried.

4. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

5. Lefkowitz v. United States, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Paper v. United States, 4 Cir., 53 F.2d 184.

6. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Matthews v. Correa, 2 Cir., 135 F.2d 534; Henderson v. United States, 5 Cir., 206 F.2d 300; Charles v. United States, 9 Cir., 278 F.2d 386.