**Conval Dello ROBINSON, Plaintiff,**

v.

**Emmitt Lee GOFF, Defendant.**

**Civ. A. No. 80–0159–B.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

June 19, 1981.

S. Strother Smith, III, Abingdon, Va., for plaintiff.

Steven F. Gibson, Grundy, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Conval Dello Robinson, seeks relief pursuant to 42 U.S.C. § 1983, alleging that the defendant, Emmitt Lee Goff, denied him due process of law by subjecting him to a false arrest for being drunk in public. A jury trial was held on 2 March 1981, resulting in a verdict for the plaintiff. This case is now before the court on the defendant's motion for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the defendant's motion is denied, and judgment is entered for the plaintiff.

### I. Statement of Facts

On the evening of 23 May 1980, after working a regular eight-hour day shift with the Virginia Department of Highways, the plaintiff took his mother to speak out against a proposed compulsory trash ordinance at a public hearing before the Buchanan County Board of Supervisors at the Buchanan County Court House in Grundy, Virginia. When the meeting dispersed, the plaintiff settled his mother in his car, which was parked in a lot near the courthouse, and went to find a place to relieve himself. No public restroom facilities were open at that hour, and the restrooms in the courthouse had been locked all evening. The plaintiff went to a dark, private spot behind a building near the parking lot and urinated. As he emerged from behind the building, he was arrested by the defendant, a deputy sheriff for the Buchanan County Sheriff's Department, who told the plaintiff he was charged with being drunk in public.

The plaintiff was taken to the Buchanan County Jail, where he was brought before a magistrate. The defendant testified that he requested that the magistrate issue a warrant charging the plaintiff with being drunk in public, leaving the plaintiff in the custody of another officer while he, the defendant, made a phone call. The defendant was not present at the proceeding before the magistrate. No evidence was given which would show that the magistrate was presented with any facts or an explanation to support an arrest of the plaintiff for being drunk in public, nor did the magistrate question the plaintiff. The magistrate stated he did not come in close enough contact with the plaintiff to determine whether the plaintiff smelled of alcohol. However, the magistrate testified that he had observed the plaintiff when the plaintiff walked in, and, based on that observation, the magistrate was of the opinion that the plaintiff was intoxicated. The magistrate issued the warrant, as requested by the defendant.

No objective test such as a balloon test, a blood test, or even asking the plaintiff to walk a chalk line, had been administered to determine whether the plaintiff was intoxicated. No witness for the plaintiff or the defendant testified that the plaintiff

smelled of alcohol. Numerous people who knew the plaintiff well and had attended the public hearing that evening testified that the plaintiff was not drinking at the meeting or after it, and that he did not appear to be intoxicated at any time that evening. However, the defendant and another deputy sheriff testified that the plaintiff gave the appearance of being intoxicated due to his speech, the look in his eyes, and his shuffling gait. The plaintiff wears thick-rimmed glasses and has a speech defect.

When the plaintiff's mother was advised that her son had been arrested, she immediately went to the jail and complained to those present that her son was a teetotaler, that he never drank any kind of alcoholic beverages, and that he had not been drinking that night. The County Commonwealth's Attorney arrived at the jail and, having heard the plaintiff's mother's complaint, advised the officers to give the plaintiff a balloon test to determine whether he had drunk any alcoholic beverages. The balloon test was given and registered negative. The plaintiff was released, and was told that the charge against him would be dropped. He was notified of the date of trial and appeared in state court on that date, where the charge against him was dismissed.

The plaintiff then brought suit in this court pursuant to 42 U.S.C. § 1983, alleging that the arrest violated his Fifth and Fourteenth Amendment rights. At trial, the plaintiff candidly stated that his only damage as a result of the arrest was his missing a day's work and, that he was paid $29.20 per day. The jury found for the plaintiff, awarding him $29.20 damages.

## II. Defenses

The defendant seeks a judgment in his favor notwithstanding the verdict. He contends that under the facts and as a matter of law that he established that probable cause existed to arrest the plaintiff. The defendant also contends that he acted in good faith in making the arrest and is therefore immune from liability.

## A. Probable Cause as a Defense

In an action under 42 U.S.C. § 1983 for illegal arrest, the plaintiff's civil rights are not violated by the arrest if probable cause for the arrest exists, even if the arrestee's innocence may subsequently be established. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Bartlett v. Wheeler*, 360 F.Supp. 1051 (W.D. Va. 1973). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson*, 386 U.S. at 555, 87 S.Ct. at 1218. However,

[t]he Fourth Amendment's prohibition against unreasonable searches and seizures demands that probable cause exist as the *sine qua non* of a lawful arrest. Only upon a showing of probable cause may an arrest warrant properly be issued. Similarly, when local statutes give a police officer authority to arrest without a warrant, he must at the time of the arrest have sufficient reliable information to satisfy the probable cause requirement. The limits that the Fourth Amendment imposes upon police conduct are well-established. Should these limits be exceeded, the arresting officer may be liable for damages under the Civil Rights Act or in a federal common law action arising under the amendment itself.

*Sullivan v. Murphy*, 478 F.2d 938 at 965 (D.C. Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973), *on remand*, 380 F.Supp. 867 (D. D.C. 1974).

The defendant contends that (1) the evidence at trial failed to establish as a matter of fact that the defendant did not have probable cause to arrest the plaintiff, and (2) the subsequent issuance of a warrant by a magistrate established as a matter of law that probable cause existed to arrest the plaintiff.

### (1) Probable Cause as a Matter of Fact

In a § 1983 action, the lawfulness of an arrest is determined under the law of the state in which the arrest is made.

*Mueller v. Powell,* 203 F.2d 797 (8th Cir. 1953). It is well established in Virginia that for an arrest to be legal, there must be probable cause for making the arrest; probable cause is "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Va. Railway & Power Co. v. Craft,* 123 Va. 260, 96 S.E. 244, 246 (1918); *Clinchfield Coal Corp. v. Redd,* 123 Va. 420, 96 S.E. 836, 842 (1918).

■ This court finds that the plaintiff's evidence was sufficient to establish that the defendant did not have probable cause to arrest the plaintiff. Testimony showed that the defendant arrested the plaintiff as the plaintiff emerged from behind a building. It was dark. Prior to arresting the plaintiff, the defendant did not speak to the plaintiff or attempt to question him. The defendant testified that he did not smell alcohol on the plaintiff's breath, and he did not administer any objective test to determine whether the plaintiff was in fact intoxicated. The jury found, based upon this conduct, that the defendant did not have probable cause to arrest the plaintiff for being drunk in public, and this court declines to disturb that verdict.[1]

### (2) Probable Cause as a Matter of Law

The defendant argues that the arrest warrant issued by the magistrate subsequent to the arrest in this action establishes as a matter of law that probable cause existed for the defendant to arrest the plaintiff, and that that determination of probable cause serves as an absolute defense against liability. Although the defendant cites no case law in support of this proposition, he analogizes the subsequent issuance of an arrest warrant to a subsequent conviction, which, even if overturned on appeal, will not be vacated on the ground that the defendant was detained without probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). This analogy is not well-placed.

■ It is true that under Virginia law, a conviction of the offense charged, even though subsequently reversed, dismissed, or vacated, is conclusive evidence of probable cause, unless the conviction was procured by the defendant through fraud or by means of evidence that he knew to be false. *Ricketts v. J. G. McCrory Co.,* 138 Va. 548, 121 S.E. 916 (1924). *See also Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). However, neither dismissal of charges nor an acquittal after an arrest is dispositive of the lawfulness of the arrest itself. Indeed, "such a disposition in favor of the arrestee is actually irrelevant on the issue of whether an arrest was either with or without probable cause." *Smith v. Swoope,* 351 F.Supp. 159 (W.D. Va. 1972).

A review of the established mechanism for obtaining warrants in Virginia underscores the vast difference between a determination of probable cause by a magistrate and a conviction. Prior to 1973, warrants were issued in the Commonwealth of Virginia by elected justices of the peace who were paid a fee for each warrant written. Candidates for justice of the peace were not required to have any prior legal training or experience; indeed, they were not required to demonstrate that they were able to read and write, prior to having their name placed on the ballot. Their sole qualification for the job was that they were elected.

Effective 1 January 1974, in an effort to upgrade the position, the office of issuing

---

1. The jury was instructed, in part,

    [I]f you believe from all of the evidence that the plaintiff has proven by a preponderance of the evidence that there was not probable cause for his being arrested on this occasion, then you shall find for the plaintiff unless you have on the other hand found that the defendant has proven that he acted in good faith actually believing, in good faith believing, that a crime had been committed as was subsequently charged. The court further instructs the jury that an arrest by an officer who had probable cause or reasonable grounds to believe that the one he was arresting committed a misdemeanor in his presence is a lawful arrest even if it is later discovered that a misdemeanor was not actually being committed.

justice was abolished, and references in state law pertaining to justices of the peace were deemed to apply to magistrates. Va. Code Ann. §§ 19.1–378 (Supp. 1975), 19.2–31, 32. Beginning 1 January 1974, magistrates have been appointed in each county and city by the chief judge of the circuit in which the county or city is located. The chief circuit judge has full supervisory authority over the magistrates so appointed. However, this authority may be delegated to the chief general district court judge, and it is in many counties. *See* Va. Code Ann. § 19.2–35.

While the law passed in 1973 was obviously designed to redefine the position of justice of the peace and to put qualified persons in that position, *see generally* Note, 59 Va.L.Rev. 1559 (1973), it may be considered that the law in this regard is a failure, because Virginia Code § 19.2–37 permits, again, almost anyone to be appointed as a magistrate, except that persons connected with the court, such as law enforcement officers and relatives of court officials, are prohibited from being appointed. Therefore, the magistrate before whom Conval Dello Robinson was taken on the evening of his arrest showed no particular qualification for the job, even though his testimony before this court was that he had served for many years. When he was questioned on cross-examination as to the hundreds of warrants he had issued over the years, he could not recall the name of any person he had declined to write a warrant on for the charge of being drunk in public, when an officer had requested such a warrant.

Virginia law does not necessarily require a magistrate to issue a warrant whenever one is requested. Virginia Code § 19.2–45 provides that "a magistrate shall have the power to issue the process of arrest in accordance with the provisions of § 19.2–71 through § 19.2–82 of the Code of Virginia." Section 19.2–82 of the Code of Virginia provides that:

A person arrested without a warrant shall be brought forthwith before an officer authorized to issue criminal warrants in the county or city where the arrest is made, unless such person is released on summons as provided by law. The officer before whom such person is brought shall proceed to examine the officer making the arrest. If the officer before whom such person is brought has reasonable grounds upon which to believe that a criminal offense has been committed, and that the person has committed such offense, he shall issue such warrant as might have been issued prior to the arrest of such person.

It should be noted that, by the terms of the statute, the magistrate does not conduct a trial, nor does he place anyone under oath. Though the taking out of a warrant by an officer is often referred to as "swearing out a warrant", the law of Virginia does not require that anyone swear that an offense has been committed. The law merely states that the magistrate shall examine the officer to determine whether the officer has reasonable grounds to make an arrest; The United States Supreme Court has stated that due process does not require anything more at that stage in the arrest proceedings. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

However, the magistrate's own testimony in this case indicated that an officer need only appear before him, and state he wanted a warrant for a particular charge. That is all the magistrate requires. Obviously, the arresting officer is going to state he has grounds to believe the offense was committed, or he would not bring the arrestee before the magistrate. Further, the arresting officer is required by statute to bring the arrestee before a magistrate when an arrest without a warrant has been effected.

When a defendant officer in a civil action relies upon probable cause as a defense to a charge of illegal arrest under 42 U.S.C. § 1983, he must establish that probable cause existed at the time the arrest was made. A warrant, subsequently issued, is irrelevant to the determination of whether the officer arresting an individual without a warrant had probable cause to arrest.

■ However, even if the magistrate's determination of probable cause is deemed, like a conviction, to bar a challenge as to probable cause to arrest, the proceedings before the magistrate in the case at bar are insufficient to establish probable cause. By the magistrate's own testimony, he did not question either the arresting officer or the plaintiff before issuing the arrest warrant. To allow the defendant to rely upon the proceeding to establish probable cause for the arrest would be to deny the plaintiff due process of law.[2]

### B. Good Faith Immunity

■ Under the doctrine of good faith, "[i]f the jury believed the testimony of the officers and disbelieved that of the [arrestee], and if the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact unconstitutional." *Pierson*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288. The defendant attempts to rely upon his bringing the plaintiff promptly before a magistrate to establish that he reasonably believed in good faith that the arrest was constitutional.

■ When a defendant in a civil rights action attempts, as here, to establish a qualified immunity defense to an allegation of illegal actions, the inquiry focuses upon the defendant's behavior at the time of the challenged actions. *See, e. g., Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232 at 247, 248, 94 S.Ct. 1683 at 1692, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547 at

557, 87 S.Ct. at 1219, 18 L.Ed.2d 288 (1967); *Bursey v. Weatherford*, 528 F.2d 483 (4th Cir. 1975). The plaintiff was arrested on the charge of being drunk in public, even though neither of the arresting officers and no one at the jail smelled anything on his breath or observed any drunken behavior. The defendant was not acting maliciously in making the arrest; however, he knew or should have known that some investigation was required prior to making an arrest on a charge of being drunk in public. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bursey v. Weatherford*, 528 F.2d 483 (4th Cir. 1975). The plaintiff in this case has a reddish complexion, wears thick-rimmed glasses, and has a speech defect. Police officers cannot be permitted to arrest people unusual in appearance for drunkenness without making any effort prior to the arrest to determine whether or not they are in fact intoxicated, merely because they can rely upon a magistrate to issue a warrant when he is asked to do so by an arresting officer.

The facts of this case were properly presented to a jury, who found that the arresting officer did not have probable cause. The court also submitted to the jury the question of good faith on the part of the officers, and the jury found that the officer did not act in good faith in arresting the plaintiff.[3] This court declines to disturb the jury's verdict. Therefore, the defendant's motion for judgment notwithstanding the verdict is denied, and judgment is hereby entered in accordance with the verdict of the jury.

---

**2.** This court finds nothing inconsistent between this holding and the opinions of the Fourth Circuit Court of Appeals in *Cramer v. Crutchfield*, 648 F.2d 943 (4th Cir. 1981) and *Brandau v. J. C. Penney Co., Inc.*, 646 F.2d 128 (4th Cir. 1981).

**3.** As to good faith immunity, the jury was instructed in part:

> If you believe that the plaintiff has made out a case by a preponderance of the evidence for a lack of probable cause for making the

arrest, then you may still find for the defendant if you should find that the defense of good faith and probable cause has been made out by the defendant. That is, if you find that the defendant arrested the plaintiff and that the defendant reasonably believed in good faith that the arrest was constitutional then it would be your duty to render a verdict for the defendant even though the arrest was in fact unconstitutional.

### III. Costs and Attorney's Fees

The plaintiff has submitted a petition for costs in this case totalling $820.41, and has requested attorney's fees of $1,856.50, representing out-of-pocket expenses of $40.50, plus 22.7 hours of work at $80 per hour. The court finds the plaintiff's petition for costs to be correct, and the plaintiff is hereby awarded $820.41 costs. Further, this court is of the opinion that attorney's fees should be awarded in this kind of case; many attorneys are reluctant to take controversial civil rights cases involving charges of improper or false arrest against local law enforcement officials. Accordingly, the court awards an attorney's fee of $1,500 to the plaintiff's counsel, which sum shall be entered as part of the judgment against the defendant. An appropriate order shall issue.