Lorenzo C. TERRELL, Plaintiff,

v.

Jack G. PETRIE, et al., Defendants.

Civ. A. No. 3:90CV00629.

United States District Court,
E.D. Virginia,
Richmond Division.

May 17, 1991.

Patrick Nicholas Anderson, Albo & Anderson, Vienna, Va., Timothy Hannapel, Cary P. Sklar, Nat. Treasury Employees Union, Washington, D.C., for plaintiff.

Debra Jean Prillaman, Asst. U.S. Atty., Office of the U.S. Atty., Richmond, Va., for defendants Petrie, Hardesty, Scott and Venini.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case involves Lorenzo Terrell's charge that he was unlawfully arrested and searched by IRS agents on March 27, 1990. The arrest was ostensibly based upon a state-issued capias for failure to pay $60 in court costs in 1982. Plaintiff, who works for the IRS claims the arrest was a pretext to search for illegal drugs. Defendants, IRS employees who either conducted the search or were supervisors, have moved to dismiss or for summary judgment on several grounds, including qualified immunity.

For the reasons discussed below, Defendants' motion will be DENIED.

### FACTS

The Court views the facts in a light most favorable to Plaintiff. *Turner v. Dammon*, 848 F.2d 440, 444 (4th Cir.1988). This obligation is heightened by the fact that Plaintiff has thus far been denied discovery, due to Defendants claim of qualified immunity.

Defendant Frank E. Hardesty ("Hardesty") is the Group Manager of the Inspection Service, Internal Security Division, Mid–Atlantic Region, Internal Revenue Service. At some point between 1986 and 1990, Hardesty became suspicious that IRS employee Lorenzo Terrell was selling drugs in the workplace. The source of this suspicion was two confidential "tips." Based upon his suspicion, Hardesty considered performing a "reasonable suspicion" drug test. As a prelude to this test, the Inspector's Office performed a criminal records check on Terrell. This search revealed that Terrell had been charged with possession of marijuana in 1982. It did not state the disposition of the charge. On March 27, 1990, Defendant Douglas Scott ("Scott") contacted the Richmond General District Court and learned that the charge

had been dismissed, but that there was an outstanding capias warrant for failure to pay court costs of $60. Scott told the clerk he wanted to pick up the capias for execution, so the clerk prepared a capias warrant dated March 27, 1990, which states that Terrell is to show cause why he should not be punished for failure to pay court costs of $60, plus interest.

Scott took the warrant, and, after discussing the matter with Hardesty, went with Defendant Charles Venini ("Venini") to Terrell's workplace to execute the capias. They interrupted a phone call, showed Terrell their credentials, and took him to a private room. They twice asked Terrell to bring his jacket, although he was not wearing one that day. They closed the door and told Terrell that they had "trouble" from 1982. One of the inspectors stood between Terrell and the door. They produced the warrant. Terrell argued that he had paid the court costs. Defendants demanded proof of payment, which Terrell could not produce. Terrell was not nervous or fidgety.

Defendant Scott asked Terrell to stand so that he could be searched. Venini proceeded to frisk Terrell. According to Terrell, the search was prolonged, lasting at least a minute. Defendant Venini placed his fingers inside the waistband of Terrell's trousers, extensively handled his buttocks, and tugged on Terrell's testicles through his pants during the search. After not discovering anything, most of the motions were repeated. Nothing was found.

Defendants informed Terrell that a Henrico County police officer was on the way to effect the arrest. The Henrico officer arrived, frisked Terrell briefly, and placed Terrell in handcuffs. Despite Terrell's protests, he was escorted through the lobby, in front of numerous employees. He was jailed for about two hours, paid court costs and interest of $90.00, and was released. No further action was taken against him.

Terrell serves as the union steward for his office. Union officials, including Doug Tomlin, president of Chapter 48, were upset by the treatment of Terrell. Mr. Tomlin met with Defendants Jack Petrie and Frank Hardesty to discuss the incident. Hardesty stated that they had "stumbled across the capias by accident," but that in 30 days, Tomlin would change his mind about the propriety of Terrell's arrest. Tomlin took this statement to mean that Terrell would subsequently be exposed on drug charges.

### § 1983 Claim

Defendants claim that Plaintiff has no claim under 42 U.S.C. § 1983, because the Defendants did not act under color of state law. Defendants claim that there must be some conspiracy with state officials; however, neither the statute nor case law supports this proposition. The capias was issued under state law, to enforce the decision of a state court. Defendants effected the search and arrest pursuant to the capias, therefore they were acting under color of state law.

When federal officials abuse authority given by the state, § 1983 is the proper remedy. See Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir.1979), rev'd on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), reh'g denied 448 U.S. 913, 101 S.Ct. 33, 65 L.Ed.2d 1176 (1980); Askew v. Bloemker, 548 F.2d 673, 677 (7th Cir.1976); Kletschka v. Driver, 411 F.2d 436, 448–49 (2d Cir.1969); Behre v. Thomas, 665 F.Supp. 89, 93 (D.N.H.1987), aff'd 843 F.2d 1385 (1st Cir.1988).

Of course, to the extent that the Defendants also acted under color of federal law, Plaintiff has a constitutional claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### FAILURE TO STATE A CONSTITUTIONAL CLAIM

Defendants argue that Plaintiff merely states common law torts, but alleges no constitutional violation. However, a search incident to a pretextual arrest violates the Fourth Amendment (see discussion below). The case law clearly established that such an arrest and search is an "unreasonable search and seizure" in violation of the Fourth Amendment, therefore

Terrell has a legitimate constitutional tort claim.

Although Defendants' actions may also have been tortious under the common law, this does not preclude an action under § 1983. Defendants cite *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) in support of their claim. However, *Paul* specifically distinguished cases such as *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), where the plaintiff alleges an unreasonable search and seizure. Since *Monroe v. Pape*, § 1983 claims have been the proper means of obtaining relief for violations of the Fourth Amendment. Plaintiff has stated a proper constitutional claim.

QUALIFIED IMMUNITY

This issue is the crux of Defendants' motion to dismiss. The central question is whether Plaintiff can prove a violation of clearly established constitutional rights if allowed to go to trial. *Turner v. Dammon*, 848 F.2d 440, 444 (4th Cir.1988). In assessing Plaintiff's claim, the Court will look to the "objective reasonableness" of the Defendants' conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the Defendants acted reasonably, even if erroneously, they are entitled to qualified immunity.[1]

Plaintiff claims Defendants violated three clearly established constitutional rights. They are considered in turn:

1. PRETEXTUAL ARREST

A. Terrell was Seized

■ First, the Court must consider whether the Defendants arrested Plaintiff Terrell. In determining whether an arrest occurred, the Court must determine "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988) (quoting *United States v.*

*Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1873, 64 L.Ed.2d 497 (1980)).

Viewing the facts in a light favorable to Terrell, the Court CONCLUDES that a reasonable person would not have felt free to leave. The display of credentials, the escort to a private office, the closed door, the placement of the officers, and the extensive search all indicate that Terrell was not free to leave. Indeed, the Defendants concede that Terrell was "detained" until a police officer arrived. Under these circumstances, a reasonable person would believe he was in custody. Once Terrell was escorted to the private, secure office, he was seized.

B. Pretextual Arrests are Unconstitutional

■ It is clearly established that an arrest effected as a pretext for an otherwise unlawful search is constitutionally defective. *See United States v. Robinson*, 414 U.S. 218, 248, 94 S.Ct. 467, 482, 38 L.Ed.2d 427, 448 (1973) (Marshall, J., dissenting); *United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *Warren v. City of Lincoln*, 816 F.2d 1254, 1257–59 (8th Cir.1987), *modified on rehearing en banc*, 864 F.2d 1436 (8th Cir.), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *United States v. Weaver*, 384 F.2d 879, 880 (4th Cir.1967), *cert. denied* 390 U.S. 983, 88 S.Ct. 1106, 19 L.Ed.2d 1282 (1968) (citing *Lefkowitz*); *United States v. Lee*, 308 F.2d 715, 718 (4th Cir.1962), *cert. denied* 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717 (1963) (citing *Lefkowitz*); *Taglavore v. United States*, 291 F.2d 262, 265 (9th Cir.1961); *Blazak v. Eyman*, 339 F.Supp. 40 (D.Ariz.1971); *Moss v. Cox*, 311 F.Supp. 1245, 1251–52 (E.D.Va.1970). *But see United States v. Trigg*, 878 F.2d 1037 (7th Cir.1989); *United States v. Causey*, 818 F.2d 354 (5th Cir. 1987), *rev'd en banc*, 834 F.2d 1179 (5th Cir.1987). *See generally* Butterfoss, *Solving the Pretext Puzzle: The Importance of Ulterior Motives and Fabrications in*

---

**1.** Of course, even if they lack qualified immunity, Defendants may assert a good faith defense. However, at this stage, the Defendants good faith, or lack thereof, is in dispute. This is a

factual matter properly left to the jury. *See, e.g., Ammlung v. Chester*, 355 F.Supp. 1300 (E.D. Pa.1973), *aff'd* 494 F.2d 811 (3d Cir.1974).

*the Supreme Court's Fourth Amendment Pretext Doctrine,* 79 Ky.L.J. 1 (1991); *Note: The Pretext Problem Revisited: A Doctrinal Explanation of Bad Faith Search and Seizure Cases,* 70 B.U.L.Rev. 111 (1990); Rudovsky, *The Qualified Immunity Doctrine in the Supreme Court: Judicial Activism and the Restriction of Constitutional Rights,* 138 U.Pa.L.Rev. 23 (1989); *Pretext Searches and the Fourth Amendment: Unconstitutional Abuses of Power,* 137 U.Pa.L.Rev. 1791 (1989); Burkoff, *The Pretext Search Doctrine: Now You See It, Now You Don't,* 17 U.Mich.J.L. Ref. 523 (1984). Although a facially valid warrant usually insulates officers from liability, the warrant will not support a purely pretextual arrest.

■ Courts considering this issue have developed an objective test to determine whether an arrest is merely a pretext. The Court should consider two questions. First, was there an ongoing investigation unrelated to the count charged in the arrest warrant? Second, would a reasonable officer have made the arrest in the absence of the pretextual motive? *United States v. Belcher,* 577 F.Supp. 1241 (E.D.Va.1983); *Horne v. Commonwealth,* 230 Va. 512, 339 S.E.2d 186 (1986).

The Court FINDS the reasoning of these cases persuasive. If the arrest would not have occurred in the absence of an unrelated investigation, then the arrest was unreasonable in violation of the Fourth Amendment. Officers may not avoid the requirement of probable cause by combing though warrant files for an excuse to arrest.

### C. Plaintiff has Alleged Facts which Suggest a Pretextual Arrest

■ Defendants concede that Terrell was under investigation for possible drug offenses, and was a possible candidate for "reasonable suspicion" drug testing. The existence of this prior investigation creates the inference that Terrell's arrest was motivated by a desire to search him for drugs, rather than a desire to see the capias warrant executed.[2] This inference, which is supported by Plaintiff's affidavits and Defendants' admissions, rises above the level of bald allegation.

Although Defendants claim that they routinely assist state authorities in the execution of warrants, both common sense and Plaintiff's affidavits suggest that stale capias warrants for court costs are routinely ignored. Plaintiff should have the opportunity to prove at trial that his arrest was a sham used to search his person. The routine practices of the Inspectors, and the objectively manifested motivation of the Defendants, are facts properly left to the jury.

Giving Plaintiff the benefit of these inferences, the Court FINDS that Plaintiff has alleged facts which, if believed, would show that Defendants acted in violation of Plaintiff's clearly established constitutional right to be free from pretextual arrest.

### 2. UNLAWFUL ARREST

■ Plaintiff also contends that the IRS Inspectors had no authority, under either federal or state law, to execute the warrant. The legality of the arrest is a question of law for the Court to determine. *United States v. Mullen,* 416 F.2d 456 (4th Cir.1969). However, the jury must determine whether a reasonable Inspector would have believed that he possessed arrest authority. The Court FINDS that the Defendants had no authority to arrest the Plaintiff, and therefore may have deprived him of his liberty without due process and probable cause, in violation of the Fourteenth Amendment.

### A. Federal Law Did Not Authorize the Arrest

Federal law grants IRS Inspectors limited arrest authority. Section 7608, titled

---

**2.** While *Harlow v. Fitzgerald, supra,* rejects any inquiry into the subjective motivations of the police officers, impermissible intentions remain relevant for certain constitutional torts. Inquiry into the Inspector's subjective knowledge of the law is foreclosed by *Harlow,* but establishing the purpose behind the arrest remains permissible. *See Turner v. Dammon,* 848 F.2d 440, 450–53 (4th Cir.1988) (Kaufman, J., concurring in part and dissenting in part).

"Authority of internal revenue enforcement officers," only authorizes IRS agents and investigators to execute arrest warrants "issued under authority of the United States." 26 U.S.C. § 7608(b)(2)(A) (1990). The statute does not authorize execution of existing state arrest warrants.

Defendants cite no federal statute or regulation which authorizes IRS agents to execute outstanding state warrants. The arresting authority of IRS agents is limited to federal warrants by § 7608. *Cf. United States v. Diamond*, 471 F.2d 771, 773 (9th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2751, 37 L.Ed.2d 161 (1973). In the absence of federal authority, the Defendants must show that the arrest was authorized by state law. They fail to do so.

### B. State Law Did Not Authorize the Arrest

Defendants contend that they were authorized to make the arrests under Virginia Code § 19.2–12 (1990), which makes special agents of the Department of the Treasury "conservators of the peace." However, conservators of the peace have limited powers, and are not the equivalent of law enforcement officers. Va.Code § 19.2–18 (1990) provides: "Powers and duties generally.—Every conservator of the peace shall have authority to arrest without a warrant in such instances as are set out in §§ 19.2–22 and 19.2–81." Conservators may also bring complaints for failure to keep the peace before a magistrate, seeking a warrant for their arrest. However, Chapter 2 of Title 19.2, which describes the authority of conservators of the peace, contains no provision authorizing execution of arrest warrants.

Chapter 7 of Title 19.2 describes Virginia's arrest procedure. § 19.2–72 concerns the arrest warrant. It provides that: "The warrant shall (i) be directed to an appropriate officer or officers.... But in a city or town having a police force, the warrant shall be directed "To any policeman of such city (or town)," and shall be executed by the policeman into whose hands it shall come to be delivered."

The Virginia Code contemplates that arrest warrants will be executed by police officers. For example, § 19.2–76.1 provides for quarterly reports on unexecuted warrants. Significantly, the statute places this duty upon "the chief law-enforcement officer or the police department or sheriff's office, *whichever is responsible for such service*, in each county, town, or city ..." This provision clearly contemplates that either the sheriff or the police department will be responsible for execution of warrants.

Additionally, § 19.2–78 provides that officers shall wear uniforms when making arrests. These sections both indicate that when the Virginia Assembly wrote in § 19.2–76 that an "officer" was authorized to execute warrants, they intended "officer" to mean a sheriff, policeman, or other local law-enforcement officer.

The Virginia Code does not authorize conservators of the peace to make arrests. The authority to arrest is limited and well defined. *McReynolds v. Commonwealth*, 177 Va. 933, 15 S.E.2d 70, 74 (1941); *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242 (1924). Warrants are rendered illegal and void unless executed by a sworn officer or an individual specifically named in the warrant. *Randolph v. Commonwealth*, 145 Va. 883, 134 S.E. 544 (1926) (quoting *Wells v. Jackson*, 17 Va. 458, 464 (1814)).

The Court's consideration of the lawfulness of Plaintiff's arrest is guided by Virginia law. *Robinson v. Goff*, 517 F.Supp. 350 (W.D.Va.1981). Virginia law grants the Defendants no authority to execute a state capias.

Because neither federal or state law authorized the execution of the capias, Defendants had no authority for their arrest.[3]

---

**3.** Although conservators of the peace can arrest without a warrant in certain circumstances, the Defendants has not indicated that such circumstances were present here. Even assuming that failure to pay court costs is a misdemeanor, it was not committed in the presence of any of the Defendants. Frankly, the Court fails to see how failure to pay court costs could give rise to the capias warrant in the first instance. Regardless of the nature of Plaintiff's "crime," however, it can hardly be argued that the Defendants had

Plaintiff therefore may have been deprived of his liberty without due process of law, in violation of the Fourteenth Amendment.

### 3. UNLAWFUL SEARCH

██ Defendants contend that even if the search was not incident to a lawful arrest, it was a permissible frisk for weapons under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry*'s "stop and frisk" rule was designed to allow frisks "upon suspicion that the person may be armed, ... in the rapidly unfolding and often dangerous situations on city streets." *Terry* has no application here.

Under *Terry* the officer must list "specific and articulable facts" which warrant the search. Here, all the Defendants knew about Terrell was that he was arrested for possession of marijuana in 1982, that the charges were dismissed, and that he had allegedly failed to pay the court costs. Even giving credence to Defendants' mistaken belief that Terrell was selling drugs, they had no reason to believe that Terrell was armed when they approached him in his office. The environment was the IRS offices, not the streets of the city. No reasonable officer would have felt threatened in these circumstances. Therefore, there was no basis for a warrantless *Terry* frisk.

### CONCLUSION

Plaintiff's allegations and supporting affidavits, coupled with Defendants' admissions, demonstrate that Defendants may have executed the obsolete capias solely for the purpose of searching Plaintiff's person incident to the arrest. This conduct, if proven, violated Plaintiff's clearly established right under the Fourth and Fourteenth Amendment to be free from pretextual searches.

Furthermore, Plaintiff has alleged facts which demonstrate that Defendants acted without federal or state authority in executing the warrant. Virginia law provides that arrest warrants are to be executed by local law enforcement officers. Defendants may have therefore acted unconstitu-

tionally when they constructively arrested Plaintiff Terrell.

probable cause sufficient to justify an arrest without a warrant.