27 F.3d 563
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wayne Rush MEADOWS, Plaintiff-Appellant,
v.
P. INGRAM; Augusta Correctional Center Medical Department,
Defendants-Appellees.
 No. 93-7308.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 5, 1994.
Decided: July 6, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Chief District Judge. (CA-93-36-R)
 Wayne Rush Meadows, Appellant Pro Se.
 Colin James Steuart Thomas, Jr., Timberlake, Smith, Thomas & Moses, P.C., Staunton, Virginia; Pamela Anne Sargent, Assistant Attorney General, Richmond, Virginia, for Appellees.
 W.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before HALL, PHILLIPS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Wayne Rush Meadows, an incarcerated prisoner, filed a civil action pursuant to 42 U.S.C. Sec. 1983 (1988), naming as Defendants P. Ingram, a nurse at the Augusta Correctional Center (ACC), the ACC, and the ACC Medical Department.[1] Meadows alleged, in a verified complaint, violation of his civil rights resulting from Defendants' failure to adequately treat his dislocated shoulder. Specifically, Meadows alleged that when his shoulder came out of its socket on November 12, 1992, he filled out a standard medical request for treatment, as he was instructed to do by the ACC Medical Department.[2] He claimed that four days later, he still had not been seen by anyone in the Medical Department, and he worked his shoulder back into place by himself. He stated that on November 16, 1992, he informed Correctional Officer Brown that he still had received no medical attention for his shoulder, and claimed that he still received no response from the Medical Department until December 20, 1992 (four and one-half weeks later). At this time, Meadows claimed he was seen by Dr. Carey at ACC, who took X-rays which showed that his shoulder was back in place.
 
 
 2
 Meadows further alleged that in the interim, on November 24, 1992, his shoulder again came out of its socket, and he filled out an emergency grievance form. The grievance was reviewed by Ingram, who decided without seeing Meadows that his condition was not an emergency. Meadows alleged that he also filled out a regular grievance form at this time; it was returned stating that an appointment was scheduled for him at the Powhatan Medical Center. According to Meadows, he was informed by the Powhatan Medical Department that his shoulder required surgery. Finally, Meadows alleged that Correctional Officers Brown, Carter (who allegedly filled out the emergency grievance form), and Campbell had knowledge of the circumstances surrounding his claim. Specifically, Meadows contended that he complained about his shoulder to these officers on two occasions, and that they told him to fill out grievances, but did not take him to the Medical Department for treatment for several days after each complaint.
 
 
 3
 Defendants filed motions to dismiss. The district judge dismissed the suit against ACC and ACC Medical Department on the ground that they are not "persons" amenable to suit under Sec. 1983, and denied Ingram's motion to dismiss. Ingram then filed a motion for summary judgment with supporting affidavits and medical records. The district judge granted Ingram's motion for summary judgment. Meadows timely appealed.
 
 
 4
 For the reasons stated below, we affirm in part, and vacate and remand in part, with instructions.
 
 I.
 
 5
 Summary judgment is appropriate when there is no genuine issue of material fact that could lead a trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir.1990) (citing Anderson, 477 U.S. at 255). This Court reviews de novo a district court's grant of summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 
 6
 According to the affidavits submitted by Ingram in support of her summary judgment motion, and supporting medical records, Ingram saw Meadows for a sick call on November 18, 1992.[3] At the time of examination, Meadows reported that he fell and injured his shoulder four days before. After her examination, which revealed that Meadows's left shoulder was somewhat higher than his right, and that Meadows was having difficulty moving his left shoulder, Ingram referred Meadows to Dr. Carey, who examined Meadows the same day. Dr. Carey noted that the muscles in Meadows's shoulder and neck were not symmetrical. Dr. Carey ordered X-rays of Meadows's left shoulder, and evaluation by the orthopedic clinic at Powhatan Correctional Center.
 
 
 7
 Defendant's affidavits and Meadows's medical records conflict with Meadows's allegation that he was not seen by medical personnel until December 20, 1992. Between November 12, 1992, and December 29, 1992, Meadows was seen by nurses three times and by Dr. Carey two times. In fact, in response to Ingram's motion, Meadows admitted that Ingram looked at his shoulder on November 18, 1992, and that Ingram referred him to Dr. Carey, who examined him on the same day.
 
 
 8
 A copy of one of the grievances filed by Meadows is included among the materials supporting Ingram's summary judgment motion. In his grievance, filed on November 24, 1992, Meadows acknowledged that he had been seen by the Medical Department for his dislocated shoulder, and that X-rays were taken. Meadows requested an emergency consultation with a surgeon at Powhatan Correctional Center. Meadows admits that his grievance did not request emergency treatment for his shoulder, although he expected to receive it. When Ingram evaluated Meadows's grievance, and reviewed his medical file, she noted that Dr. Carey had already ordered a consultation with the surgeon at Powhatan Correctional Center. Based on this information, Ingram ruled the grievance a non-emergency.
 
 
 9
 Meadows was seen by a surgeon at Powhatan Correctional Center on December 22, 1992. The surgeon diagnosed Meadows with recurrent dislocation of the left shoulder and recommended examination under anesthesia, and repair as needed; the procedure was performed seven months after Meadows's initial grievance, after which Meadows was seen for follow-up several times.
 
 
 10
 Meadows's primary claims are that (1)he was not given medical attention until six days after he first requested it on November 12, 1992, and (2)Ingram determined that his second grievance was not an emergency without the benefit of a personal examination. He also contends that correctional officers knew of his repeated shoulder dislocations, but failed to take him to the Medical Department for emergency treatment; however, he did not name the correctional officers as defendants. Meadows contends that when he first experienced problems with his shoulder he was contacted by the Medical Department and told to file a standard (rather than an emergency) request. He states that he was placed on the sick call list and seen by Ingram on November 18, 1992, the normal day for sick call.
 
 
 11
 Mere disagreements between a health care provider and an inmate over the proper course of treatment do not state a viable Eighth Amendment claim, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975), nor is mere malpractice by medical personnel sufficient to state a claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To establish deliberate indifference, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.... A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier v. Beorn, 896 F.2d at 851-52.
 
 
 12
 Meadows's claim against Ingram rests on delay in obtaining treatment for his dislocated shoulder. However, Ingram was not responsible for this delay. Although Meadows was initially injured on November 12, Ingram was unaware of the injury until she examined him on November 18. At that point, Ingram referred Meadows to Dr. Carey for further examination. On November 24, Meadows filed an emergency grievance, but he did not request emergency medical treat ment for his shoulder. Thus, Ingram reviewed Meadows's file, and upon discovering that Dr. Carey had already referred Meadows to a surgeon, she properly ruled the grievance a non-emergency.
 
 
 13
 We find that, even taking the facts in the light most favorable to Meadows, Ingram's actions did not constitute deliberate indifference. Accordingly, we affirm the district court's grant of summary judgment to Ingram.
 
 II.
 
 14
 The district court dismissed Meadows's claims against ACC and ACC Medical Department on the ground that these Defendants are not "persons" amenable to suit under Sec. 1983. We find that the district court's determination was correct as to these named Defendants.[4] See Will v. Michigan Dept of State Police, 491 U.S. 58, 71 (1989).
 
 III.
 
 15
 In the body of his complaint, Meadows named several ACC correctional officers, who he claimed were responsible for the delay in treatment at the outset of his medical problems. Pro se complaints are held to less stringent standards than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972). When a pro se litigant alleges a cause of action which may be meritorious against persons unknown, the district court should "afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed and direct or permit amendment of the pleadings to bring that person or persons before the court." Gordon v. Leeke, 574 F.2d 1147, 1152-53 (4th Cir.), cert. denied, 439 U.S. 970 (1978).
 
 
 16
 Although Meadows did not name the three cognizant correctional officers as defendants, in the spirit of Gordon v. Leeke, the district court should have informed Meadows that he had not named those officers as Defendants in this case, and should have advised and permitted him to amend his complaint.
 
 
 17
 Accordingly, we affirm the order dismissing Meadows's complaint against ACC, ACC Medical Department, and Ingram, and we vacate and remand to the district court with directions to allow Meadows to amend his complaint to name the three correctional officers. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 18
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 Meadows's complaint listed as Defendants:
 P. Ingram & Augusta Correctional Center Medical Department
 Both ACC and the ACC Medical Department filed motions to dismiss. The district court docket sheet lists "Augusta Correctional Center Medical Department" as a single Defendant; however, the district court addressed the action as if ACC and the ACC Medical Department were separate Defendants.
 
 
 [2]
 A copy of Meadows's standard medical request for treatment is not included in the record
 
 
 [3]
 Meadows was housed in the ACC segregation unit at the time he dislocated his shoulder; sick calls for inmates in segregation are held once a week
 
 
 [4]
 In addition to the ground specified by the district court, these Defendants, as agencies of the state, were subject to dismissal on Eleventh Amendment immunity grounds. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984); Scheuer v. Rhodes, 416 U.S. 232, 237 (1974). Because ACC and its Medical Department are owned and operated by the Commonwealth of Virginia, Va.Code Ann. Secs. 53.1-1, -8 (Michie 1991), a judgment against these Defendants would obligate payment by the Commonwealth of Virginia, and Eleventh Amendment immunity operated to protect these Defendants from liability for damages