**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 24-7215**

—————

PATRICK NICHOLS, a/k/a Abdullah Rahin,

Plaintiff – Appellant,

v.

N. BUMGARNER, Montgomery County Police Officer,

Defendant – Appellee.

—————

Appeal from the United States District Court for the District of Maryland at Baltimore. Brendan A. Hurson, District Judge. (1:23-cv-00014-BAH)

—————

Argued:  March 18, 2026                         Decided:  April 22, 2026

—————

Before GREGORY, WYNN, and BERNER, Circuit Judges.

—————

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Wynn and Judge Berner joined.

—————

**ARGUED:**  Christian H. Ross, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  Kristen Joanne Nunley, OFFICE OF THE COUNTY ATTORNEY, Rockville, Maryland, for Appellee.  **ON BRIEF:**  Richard B. Katskee, Emma B. Cline, Molly E. Pines, Appellate Litigation Clinic, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  John P. Markovs, County Attorney, Edward B. Lattner, Deputy County Attorney, Erin J. Ashbarry, Chief, Division of Government Operations and Appeals, OFFICE OF THE COUNTY ATTORNEY, Rockville, Maryland, for Appellee.

—————

GREGORY, Circuit Judge:

This case concerns an excessive force claim brought by a pro se plaintiff, Patrick Nichols, against the two officers who arrested him. Nichols alleges that the force used by the officers was disproportionate to any potential threat he could have posed. Holding that the complaint lacked sufficient detail, the district court dismissed Nichols's complaint for failure to state a claim upon which relief could be granted.

As explained herein, we hold that the district court erroneously dismissed Nichols's amended complaint. We also hold that the district erred by treating only one officer as a defendant. Accordingly, we vacate the district court's order of dismissal and remand for further proceedings.

I.

On March 24, 2022, Officers Bumgarner and Schmidt (the "Officers") arrested Nichols in Bethesda, Maryland on a warrant for theft, forgery, and burglary.[1] Despite Nichols "not do[ing] not[h]ing [to] him," Bumgarner slammed Nichols to the ground. J.A. 17; J.A. 54. Within moments of initiating the arrest, Officer Bumgarner broke Nichols's left forearm in two places.

Nichols suffered more than just a broken arm during his arrest. After Bumgarner slammed Nichols to the ground, Schmidt placed his knee on Nichols's throat. As a result,

---

[1] The following facts come from Nichols's complaints, which we accept as true at the pleading stage. We also may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is relevant and critical to the matter on appeal." *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018) (internal quotations omitted). We take judicial notice on appeal of the warrant.

2

Nichols was unable to breathe and feared for his life. Nichols maintains that throughout these events, he did nothing to the Officers and their lives were "in no danger or harm." J.A. 54.

Upon arrival at the police station, a doctor examined Nichols's arm and instructed the Officers to take Nichols to the hospital. There, x-rays confirmed that Nichols's arm had multiple fractures. Nichols still requires treatment for his arm, including a "bone healing machine" and pain medication. J.A. 17; J.A. 55. An operation may be necessary for his arm to fully heal. Years later, Nichols remains in a state of constant pain and stress over the incident.

Using a form provided by the district court, Nichols filed his initial pro se complaint on January 3, 2023. In the caption of the complaint, Nichols listed Bumgarner as the defendant. In the body, Nichols briefly summarized the events of the arrest and requested $4 million in damages. While Nichols did not mention Schmidt by name, he did refer to "another officer" who "had his knee on [Nichols's] throat." J.A. 13. Nichols also stated that footage from the incident existed and would show what happened.

Bumgarner[2] moved to dismiss Nichols's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Nichols failed to properly state a claim for which relief could be granted. Nichols responded that he provided enough specificity to show that

---

[2] For reasons discussed below, Bumgarner is the only defendant that has participated in the proceedings thus far. As a result, any arguments raised against Nichols's excessive force claim have come from Bumgarner alone.

Bumgarner and the "other officer" violated his constitutional rights under the Fourth Amendment. J.A. 37–39.

Finding no need for a hearing, the court dismissed the complaint without prejudice. While the court acknowledged that Nichols's complaint seemed to raise an excessive force claim, it nevertheless concluded that the complaint lacked sufficient detail. Specifically, the court concluded that Nichols provided "no information about the circumstances of the arrest, the severity of the alleged crime at issue, his actions, or any potential threat which existed to himself, the officers, or bystanders." J.A. 46. Moreover, the court held that what Nichols *did* include in the complaint was too conclusory.

Still proceeding pro se, Nichols filed an amended complaint on April 15, 2024. This time, however, Nichols utilized a complaint form specifically designed for pro se civil rights plaintiffs bringing claims under 42 U.S.C. § 1983. Again, Nichols listed only Bumgarner in the caption. In the body, however, Nichols referred to Schmidt by name and described Schmidt's conduct during the arrest. Reiterating that the Officers' lives were never in any danger, Nichols stated that there was no reason for the Officers to use force against him.

Again, Bumgarner moved to dismiss under Rule 12(b)(6). Again, with no hearing, the district court dismissed Nichols's complaint. Largely reusing the same language from its first dismissal, the court held that Nichols failed to provide sufficient facts stating a claim upon which relief could be granted. It concluded that the "amended complaint add[ed] virtually no additional facts to those provided in the original complaint." J.A. 81.

4

The court disposed of Nichols's statements that he feared for his life and posed no threat to the Officers as "unsupported allegations."  J.A. 81.

At no point did the district court acknowledge Schmidt as a defendant.  Rather, the court treated Nichols's pleadings solely as an excessive force claim against Bumgarner.

Now, with the aid of counsel, Nichols appeals the dismissal of his complaint.[3]

## II.

Before addressing whether Nichols has stated an excessive force claim, we must establish *who* the complaint was brought against.  On appeal, Nichols maintains that this case has always been against both Officers Bumgarner and Schmidt.  Bumgarner disagrees, arguing that Nichols's failure to include Schmidt in the caption of either complaint rendered service of process to Schmidt impossible.  We agree with Nichols:  the amended complaint should have put Schmidt on notice that he was also a party defendant to this lawsuit.

Federal Rule of Civil Procedure 10(a) states:  "The title of the complaint must name all the parties."  Generally, failure to comply with procedural rules would warrant dismissal or other penalties.  Pro se plaintiffs, "like all other litigants . . . must comply with substantive and procedural . . . rules."  *U.S. v. Beckton*, 740 F.3d 303, 306 (4th Cir. 2014).  Yet, this Court has long held that "a pro se complaint, however inartfully pleaded, must be

---

[3] The Appellate Litigation Clinic at the Duke University School of Law represented Nichols as *pro bono* counsel.  Duke Law student Christian Ross ably argued on behalf of Nichols as an eligible law student pursuant to Local Appellate Rule 46(a).  The panel commends Mr. Ross for his excellent oral advocacy.  The district court may also wish to consider appointing *pro bono* counsel to represent Nichols on remand.

held to less stringent standards than formal pleadings drafted by lawyers." *Hammock v. Watts*, 146 F.4th 349, 360 (4th Cir. 2025) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) ("It is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated . . . .").

Here, it does not appear that Schmidt was individually served at any point in the district court's proceedings. But the fault lies with the district court, not Nichols. Nichols remained incarcerated and proceeded pro se throughout the proceedings. As such, the district court was responsible for effectuating process. The district court acknowledged as much through its order[4] to the Clerk to send a copy of the complaint to the Montgomery County Attorney's Office (the "Office"). J.A. 20–21.

From the outset, Nichols referred to the conduct of two officers as the subject of his complaint. In his original complaint,[5] Nichols described the actions of Bumgarner and "another officer [who] had his knee on [Nichols's] throat." J.A. 13. From this alone, it would not have been a particularly onerous task for the district court or Bumgarner to conclude that Nichols intended to sue both officers. It would have been appropriate for the

---

[4] The Montgomery County Attorney's Office would represent all officers sued. The district court sends copies of civil rights actions brought by prisoners to County Attorneys and asks them "to identify those individuals and entities s/he will represent and those whom counsel cannot automatically represent by notifying the court of same." D. Md. S.O. 2012-01.

[5] The relevant section of the court-issued complaint form, labeled "Statement of Claim," instructed Nichols to state, "as briefly as possible the facts" and "how *each defendant* was involved and what *each defendant* did that caused the plaintiff harm or violated the plaintiff's rights." J.A. 13 (emphasis added).

6

district court to order the Office to identify and serve process on the then-unidentified second officer. *See Gordon*, 574 F.2d at 1152.

Moreover, little in the Court's initial order to the Clerk would have alerted Nichols to the risk of Schmidt not being served. While the Order's caption listed Bumgarner as the sole defendant, the remainder of the order refers to "Defendants."[6] From the perspective of Nichols, this language would suggest that the Office was to serve both Officers.

Bumgarner nevertheless argues that requiring district courts to look to the body of the complaint would "transform the district court . . . to the improper role of an advocate." Reply Br. at 24 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1389 (4th Cir. 1993)). Obviously, it would be "an absurd result indeed to require defense counsel to assume that any and every individual named in the body of an incarcerated pro se plaintiff's Complaint is a named party to the case requiring its legal services . . . ." Reply Br. at 24–25. Perhaps this description is true, but it does not reflect the present case.

Here, we have more: in his amended complaint, Nichols was expressly instructed to include facts involving the named defendants in his case, and he identified Schmidt as one of the perpetrators of the excessive force used against him. In the "STATEMENT OF CLAIM" section, the form instructed Nichols to state "briefly the FACTS that support your case" by describing "what happened, how [he] was harmed, and how <u>each defendant</u> that [he] named took a wrongful action that caused [him] harm." J.A. 54 (emphasis in original). While Nichols still listed Bumgarner as the only defendant in the caption of the amended

---

[6] *See* J.A. 20–21 (using phrases such as "[i]f service on behalf of *Defendants* is NOT accepted" and "[i]f *Defendants* require an additional period of time") (emphasis added).

complaint, he followed these instructions by describing Schmidt's actions. *See* J.A. 54–55 (stating that "Schmidt had put his knee on [Nichols's] throat" and that both "Bumgarner *and* . . . Schmidt [were] wrongful") (emphasis added). If the district court did not realize that Nichols intended to sue both Officers before, it certainly should have here.

In cases like this one, where an incarcerated, civil rights plaintiff files a pro se complaint using a court-issued form, district courts have a duty to examine its contents thoroughly. District courts are not required "to assume the role of advocate for the pro se plaintiff," *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016), nor must they carefully comb through every line searching for all possible defendants. But we have routinely discouraged district courts from dismissing claims unless, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences . . . in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023) (citation omitted). We have mandated even greater leniency when "an action implicates a civil rights interest." *Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2025) (citation omitted).

When the body of a pro se complaint makes it clear that an additional party is intended as a defendant, the district court must act accordingly. Our sister circuits have issued similar instructions to district courts. In the Tenth Circuit, the Court has permitted district courts to "look to the body of the complaint to determine who the intended and proper defendants are" when a pro se plaintiff names the wrong defendant in the caption. *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243–44 (10th Cir. 2007). The Ninth Circuit has

8

extended similar leniency to pro se plaintiffs. In *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082 (9th Cir. 1983), the Court held that "the question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint." *Id.* at 1085. "Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." *Id.*

Today, we extend similar grace to pro se civil rights plaintiffs who rely on complaint forms provided by the district court. [7] If the body of a complaint indicates that the plaintiff intended to sue parties left out of the caption, the district court must help remedy the error. Here, the district court should have either afforded Nichols the opportunity to add Schmidt to the caption of his complaint or instructed the Office to serve both officers.

In sum, today's decision constitutes a natural extension of, rather than a departure from, our longstanding approach to pro se civil rights cases. We value the essential work that our district courts do, and we are not ignorant of the fact that their roles are demanding. We also "acknowledge that the leniency with which we treat pro se litigants' pleadings in the civil rights context may marginally increase burdens on defendants." *Shaw*, 59 F.4th at 128. Yet "context demands this searching treatment." *Id.* Without it, we risk exposing the most vulnerable participants of the legal system to "injustices that we cannot condone." *Id.*

III.

---

[7] Like pro se litigants, district courts benefit from the use of these standardized forms. In terms of legibility, length, and structure, these complaints are often more manageable than alternatives such as completely handwritten or artificially generated complaints. Accordingly, district courts ought to review all the information housed within the four corners of these complaints.

9

With that, we turn to the excessive force claim. "We review a district court's dismissal under Rule 12(b)(6) de novo and view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations." *Hammock*, 146 F.4th at 359. At this early stage, the central inquiry is whether the complaint states a plausible claim for relief. *See Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In considering a motion to dismiss a pro se complaint implicating a civil rights interest, district courts must apply the same liberal standards discussed above. *See Gowen*, 130 F.4th at 171. Applying those standards here, we vacate the district court's dismissal and remand for further proceedings.

Claims of excessive force during an arrest are examined under the Fourth Amendment's "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used by an officer was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *E.W. ex. rel. T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2017) (internal quotations omitted) (quoting *Graham*, 490 U.S. at 396). This balancing requires "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Under *Graham*, courts consider three factors: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight." *Id.* However, these factors are not exclusive, and courts may identify additional "types of objective circumstances potentially relevant to a determination of excessive force."

10

*Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). In addition to the three *Graham* factors, this Court considers the "extent of the plaintiff's injuries." *Nazario v. Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024). While these four factors provide the general framework for analyzing an excessive force claim, none alone are dispositive. *See id.* ("Ultimately, the overarching inquiry is whether the force that was used was proportional under the circumstances.").

## A.

The first *Graham* factor, severity of the crime at issue, weighs in neither party's favor. While Nichols failed to mention the specific offenses leading to his arrest, he did explain that the Officers approached him saying that they "had a warrant." J.A. 54. Because the severity of the crimes at issue are central to the *Graham* analysis, this Court may take judicial notice of them. *See United States v. Fowler*, 58 F.4th 142, 152 (4th Cir. 2023) ("While appellate courts are normally bound to information contained within the record, [they] may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is relevant and critical to the matter on appeal.") (internal quotations omitted).

At the time of the arrest, Nichols had outstanding warrants for theft, forgery, and burglary. Neither party suggests that theft or forgery are especially severe crimes. Instead, Bumgarner exclusively focuses on the severity of the burglary charge. Bumgarner argues

11

that Nichols *could* have committed a burglary in a violent manner.[8]  But making inferences about *how* Nichols committed the alleged burglary at this stage in litigation is premature. Thus, the question of whether the severity of Nichols's alleged crimes made the Officers' use of force reasonable should be answered after discovery.

## B.

The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the police officers or others, weighs in Nichols's favor.  Rather than focus on a plaintiff's prior conduct or the reason for their arrest, this factor looks to a plaintiff's conduct *during* the arrest.  *See Dolgos*, 884 F.3d at 180–81 ("In assessing the threat an individual poses, it is often useful to consider the suspect's conduct at the time of the arrest . . . .").  If the arresting officer has no reason to believe that the suspect is armed, the suspect likely does not pose a significant threat.  *See Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015). Furthermore, when a suspect remains calm during an arrest, and refrains from making physical or verbal threats to officers or bystanders, a reasonable officer would not view them as a threat.  *See Nazario*, 103 F.4th at 234.

Here, based on the facts as Nichols has pleaded them, the Officers could not have reasonably believed that Nichols posed an immediate threat to anyone.  Nichols repeatedly states he "did not do not[h]ing" to Bumgarner and that Bumgarner's life was "in no danger

---

[8] Bumgarner cites the language of Maryland's burglary statute, which states that "[a] person may not break and enter the storehouse of another with the intent to commit theft, a crime of violence, or arson in the second degree."  MD. CODE ANN., CRIM. LAW § 6-203(a).  Bumgarner argues that this offense "certainly *can* be a violent crime."  Reply Br. at 9 (emphasis added).

or harm." J.A. 17; J.A. 54.  Nichols also alleges that he was "slammed on the ground," that he "couldn't bre[ath]e for a second" because of Schmidt's knee on his throat, and that his own "life was in danger." J.A. 54–55; J.A. 67.

Bumgarner dismisses these statements as legal conclusions devoid of supporting facts, but this characterization is improper.  First, the statement that Nichols "did not do not[h]ing" to Bumgarner is a statement of fact, not a legal conclusion.  *See Iqbal*, 556 U.S. at 678–79 (describing conclusory statements as "a formulaic recitation of the elements of a cause of action") (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, rather than provide only "naked assertions devoid of further factual enhancement," Nichols supported his allegation that Bumgarner's life was "in no danger or harm" with additional facts illustrating that Nichols was at the mercy of the Officers.  *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).  After "drawing all reasonable factual inferences from those facts in [his] favor," these well-pleaded facts suggest that Nichols could not have posed a significant threat to the Officers.  *Shaw*, 59 F.4th at 127.

Still, Bumgarner argues that these facts fail to show that Nichols was not a threat. At oral argument, Bumgarner stated that Nichols could have included statements such as "there were no bystanders around" to show that no threat existed.  Oral Arg. 25:40–25:48. In requiring Nichols to provide additional details as to how he did *not* pose a threat to others, Bumgarner asks Nichols to prove a negative.  This Sisyphean task is unnecessary. Federal Rule of Civil Procedure 8(a)(2) requires "a *short and plain* statement of the claim showing that the pleader is entitled to relief." (emphasis added).  Neither the Federal Rules, nor any of this Court's caselaw, require plaintiffs to list everything that did *not* happen to

13

bolster what they allege *did* happen.  Because the facts Nichols does allege indicate that he posed no threat at the time of the arrest, the second *Graham* factor weighs in his favor.

C.

The third *Graham* factor, whether the suspect actively resisted arrest or attempted to evade arrest by flight, weighs in neither party's favor.  Like the previous factor, we look at the suspect's conduct during the arrest for signs of resistance or flight.  Resisting arrest requires more than mere hesitation to comply with an officer's order or instinctively pulling away from their grip. *See Nazario*, 103 F.4th at 234 (holding that a suspect's failure to exit their vehicle upon request could be explained by concerns over their own safety); *Ray*, 781 F.3d at 103 (concluding that a suspect was not evading or resisting arrest when she instinctively pulled away from an officer's sudden grip).  Evading arrest typically involves a clear effort to flee, such as speeding away from officers. *Compare Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025) (concluding that a suspect speeding "away from officers the moment blue lights were activated" clearly demonstrated flight) *with Ray*, 781 F.3d at 103 (stating that a reasonable jury could find that a suspect taking a single step off of a stoop was not an act of flight).

Here, the only relevant facts provided by Nichols is that he "did not do not[h]ing." and that Bumgarner "slam[med him] on the ground for no reason."  J.A. 17; J.A. 54.  While these facts support the inference that Nichols posed little to no threat to the Officers, they say little about the issue of flight.  It is entirely possible that Nichols could have "done

14

not[h]ing" to Bumgarner by simply running away.[9]  Nichols asks the Court to infer from these statements that he neither resisted nor attempted to evade arrest.  Unlike the previous factor, however, we lack any fact that, even under the most favorable light, could support this inference.  Siding with Nichols here would require the Court to "act as an advocate" on his behalf and read too closely between the lines.  *Gordon*, 574 F.2d at 1152.  Therefore, this factor favors neither Nichols nor the Officers.

## D.

The fourth factor, the extent of the plaintiff's injuries, weighs strongly in Nichols's favor.  In analyzing this factor, the Court looks to the scope and duration of the plaintiff's injuries.  *See, e.g.*, *Nazario*, 103 F.4th at 235 (discussing the effects and duration of pepper spray).  Serious injuries that could lead to death or permanent disability weigh strongly in a plaintiff's favor.  *See Lewis v. Caraballo*, 98 F.4th 521, 532 (4th Cir. 2024) (stating that an officer's strikes to a teenager's head were "at the very least . . . significant" and "could constitute deadly force"); *Rowland v. Perry*, 41 F.3d 167, 172–74 (4th Cir. 1994) (stating that a torn ligament in a plaintiff's leg, which required two surgeries and resulted in permanent partial disability, was a serious injury).  However, even seemingly minor injuries may be unreasonable under the totality of the circumstances.  *See Dolgos*, 884 F.3d at 185 (holding that handcuffing a ten-year-old girl while at school was excessive force);

---

[9] Bumgarner suggests that the phrase "did not do not[h]ing" is more commonly associated with a suspect rejecting the charges alleged in a warrant.  However, the exact language used by Nichols was that he "did not do not[h]ing *for* him."  J.A. 17 (emphasis added).  While the specifics of Nichols's actions are unknown, this phrase clearly related to the events of the arrest rather than the contents of the warrant.

*see also Nazario*, 103 F.4th at 235 (concluding that while the use of pepper spray, which causes temporarily debilitating and painful injuries, was "slight" and not "permanent or particularly grievous," it still weighed "somewhat in [the plaintiff's] favor").

Nichols suffered two injuries during the arrest, a broken arm and the inability to breathe. The former falls squarely within the definition of serious injury. Two bones in his arm were cracked and have not fully healed. He requires medication to manage persisting pain and may eventually require an operation on his arm to reach full recovery. Such damage is "serious [and] permanent." *Hupp*, 931 F.3d at 322. Even if his injuries had been more superficial or healed properly—which they have not—they would still be severe. *See Jones v. Buchanan*, 325 F.3d 520, 530–31 (4th Cir. 2003) (concluding that a broken nose, lacerations to the face, and bruised ribs were severe injuries). As such, Nichols's arm injuries alone weigh this factor in his favor.

Moreover, Nichols was also unable to "bre[athe] for a second" when Schmidt placed his knee on his throat. J.A. 54–55. Even if his inability to breathe was "for a second" in the literal sense, this would still be significant. *See Nazario*, 103 F.4th at 235 ("Nevertheless, [plaintiff]'s injuries were *temporarily* debilitating and painful. Thus, the fourth factor is somewhat in plaintiff's favor.") (emphasis added). While Schmidt's knee was on his neck, Nichols felt as though his "life was in danger." J.A. 55. Fearing for one's life is a recognizable injury. *See Nazario*, 103 F.4th at 235 (discussing the "psychological effects" produced by pepper spray, "such as disorientation and fear"). This fear, coupled with the severe damage done to his arm, causes the fourth factor to weigh heavily in Nichols's favor.

16

E.

Looking at these factors cumulatively, Nichols has adequately alleged that the force used by the Officers was excessive. At this early stage in the proceedings, we can assess the weight of some of the *Graham* factors more easily than others. Two factors, whether the suspect posed an immediate threat to the safety of the officers or others and the extent of the plaintiff's injuries, weigh in Nichols's favor. The remaining two, severity of the crime at issue and whether the suspect actively resisted arrest or attempted to evade arrest by flight, are neutral without discovery. As such, at this stage the balance of the *Graham* factors supports the finding that Nichols has stated a plausible claim for excessive force. *See Rowland*, 41 F.3d at 173 (noting that *Graham* "frames the reasonableness determination in a larger perspective, evaluating all relevant factors rather than any one in isolation").

IV.

Finally, we turn to Bumgarner's defense of qualified immunity. The district court did not address this. Bumgarner nevertheless argues that this Court is "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." Reply Br. at 25–26 (quoting *United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015)). We decline this suggestion.

Defendants "carry the burden of demonstrating qualified immunity." *Hammock*, 146 F.4th at 364. At the motion to dismiss stage, it is generally difficult to establish this defense because plaintiffs "must present only 'a claim that is plausible on its face.'" *Barber*

17

*v. Riddick*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) (quoting *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 396 (4th Cir. 2014)).  Rather, qualified immunity is typically "best addressed 'at the summary judgment stage after the facts have been developed through discovery.'"  *Id.*  It is not impossible for defendants to succeed at such an early stage.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).").  But such cases are rare, and this is not one of them.

While Nichols has plausibly alleged an excessive force claim, the details of the arrest remain unknown.  As Bumgarner argues, there may be more that happened between the Officers' initial approach and Nichols being slammed on the ground.  But, the additional questions of fact, if any, have yet to be resolved.  If such questions do arise, they "should be resolved on a motion for summary judgment, after discovery has occurred." *Hammock*, 146 F.4th at 364–65.

## V.

Nichols, a pro se civil rights plaintiff, utilized a court-issued complaint form as an untrained, lay person would.  The mere fact that he did not include Schmidt in both the body *and* caption of the complaint should not have prevented an otherwise potentially meritorious claim from proceeding against both Officers who injured him.  And, at the pleading stage, Nichols sufficiently alleged that the Officers' use of force during his arrest was not objectively reasonable under the circumstances.  We hold that the district court

18

erred in treating Nichols's amended complaint as solely against Bumgarner and erred in dismissing Nichols's excessive force claim.

For these reasons, we vacate the district court's dismissal of Nichols's amended complaint and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*